The YOUGHIOGHENY & OHIO COAL COMPANY, Petitioner,

v.

Fred WEBB III (Executor of the Estate of Fred Webb Jr.) and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.

No. 94–3096.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 18, 1995.

Decided March 14, 1995.

John G. Paleudis (argued and briefed), Hanlon, Duff, Paleudis & Estadt, St. Clairsville, OH, for petitioner.

R. Joseph Tarian, Canton, OH, Michael J. Denney, U.S. Dept. of Labor, Office of the Sol., Washington, DC, Patrick L. Menicos (argued and briefed), Olson & Menicos, Uniontown, OH, Richard A. Seid (argued and briefed), U.S. Dept. of Labor, Office of the Sol., Washington, DC, for respondents.

Before: ENGEL, KENNEDY, and SUHRHEINRICH, Circuit Judges.

SUHRHEINRICH, Circuit Judge.

Petitioner Youghiogheny & Ohio Coal Company ("Y & O") appeals the decision of the Benefits Review Board ("the Board" or "BRB") awarding black lung disability benefits to respondent Fred Webb, Jr. ("Webb"). Because we conclude that the administrative law judge applied the appropriate standards and based his decision to award benefits on substantial evidence, we **AFFIRM** the Board's award of benefits.

## I.

Webb was employed as a miner with Y & O for forty-one years. Webb filed an application for benefits in May 1976. In his application, he listed his wife as his sole dependent. Webb's wife died in 1979. The District Director preliminarily approved Webb's claim on June 6, 1980. The Director notified Y & O that it was responsible for paying the benefits and gave Y & O an opportunity to obtain medical evidence. Y & O referred Webb to Dr. George Kress, who examined Webb and prepared a December 1980 report. Webb died on April 13, 1981.

After Y & O submitted its medical evidence to the District Director, the Director approved Webb's claim for benefits. The benefits awarded covered the period between May 1976, when Webb filed his application, through March 1981, the month before Webb died. Y & O appealed the decision. In 1985, Administrative Law Judge (ALJ) Hillyard conducted a formal hearing and awarded benefits, payable to Fred Webb III, as executor of Webb's estate. The ALJ found, and Y & O agreed, that a December 11, 1980 pulmonary function study done by Dr. Kress was sufficient to invoke the interim 20 C.F.R.

§ 727.203(a)(2) presumption.[1] The ALJ also invoked a presumption pursuant to § 727.203(a)(4) based upon the opinions of the two physicians of record, Dr. Carneiro and Dr. Kress, concluding that these opinions established a totally disabling respiratory or pulmonary impairment.[2] Additionally, the ALJ found that Webb's claim did not abate upon his death.

Y & O appealed the ALJ's decision. On December 16, 1993, the Board affirmed the ALJ's award of benefits. This timely appeal followed.

## II.

We review the ALJ's decision to determine whether it is supported by substantial evidence and is consistent with applicable law. *O'Keeffe v. Smith, Hinchman & Grylls Assocs.*, 380 U.S. 359, 85 S.Ct. 1012, 13 L.Ed.2d 895 (1965); *Consolidation Coal Co. v. Worrell*, 27 F.3d 227, 230–31 (6th Cir.1994)(per curiam). "When the question is whether the ALJ reached the correct result after weighing conflicting medical evidence, 'our scope of review ... is exceedingly narrow. Absent an error of law, findings of facts and conclusions flowing therefrom must be affirmed if supported by substantial evidence.'" *Consolidation Coal*, 27 F.3d at 230–31 (citation omitted). Substantial evidence is more than a scintilla of evidence, or that which a reasonable mind might accept as adequately supporting a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Thus, as long as the ALJ's conclusion is supported by the evidence, we will not reverse, even if the facts permit an alternative conclusion. *Neace v. Director, OWCP*, 867 F.2d 264, 267 (6th Cir.1989).

---

**1.** Section 727.203(a) sets forth the medical criteria that may be used to invoke the interim presumption of total disability due to pneumoconiosis arising out of coal mine employment. The presumption establishes the four elements of eligibility under the Black Lung Benefits Act: 1) the existence of pneumoconiosis; 2) the causal connection between the pneumoconiosis and the miner's coal mine employment; 3) total disability; and 4) the causal connection between the miner's pneumoconiosis and total disability. A

miner may use a pulmonary function study, provided it meets the table values set forth under § 727.203(a)(2), to invoke the interim presumption of disability.

**2.** The ALJ also found that the x-ray evidence was negative for pneumoconiosis and therefore did not invoke the § 727.203(a)(1) presumption, and found that the arterial blood gas study did not invoke the § 727.203(a)(3) presumption.

Petitioner presents two issues on appeal: 1) whether the executor of a miner's estate may pursue the miner's claim for black lung benefits; and 2) whether substantial evidence supported the ALJ's determination that Webb was entitled to benefits.

### A.

The parties agree that the purpose of the Black Lung Benefits Act ("BLA" or "the Act") is to establish a federal black lung benefits program for coal miners who are totally disabled due to pneumoconiosis and for surviving dependents of miners whose death was due to pneumoconiosis. 30 U.S.C. § 901(a). This circuit has stated that the Act "was enacted in order to *facilitate and liberalize the flow of compensation to miners* who acquire pneumoconiosis as a result of working in coal mines." *Wiley v. Consolidation Coal Co.,* 892 F.2d 498, 503 (6th Cir.1989)(emphasis added).

It is undisputed that Webb's adult son is not eligible to receive benefits as a dependent survivor. Y & O argues that Webb's claim abated when he died leaving no eligible dependent survivors. Y & O contends that 20 C.F.R. § 725.545 is invalid because it reaches beyond the scope of the BLA.

■■ We disagree with Y & O's assertion and find that Webb's claim did not abate upon his death. This result is readily apparent from a review of the statutory language of the BLA and the Social Security Act, which is incorporated in the BLA. Pursuant to the statutory authority set forth below, we believe that the BLA both contemplates and authorizes certain nondependant heirs to pursue the deceased miner's claim for benefits.

The BLA consists of two substantive parts, Parts B and C, the administration of which Congress has delegated to different agencies: the Department of Health & Human Services (the Social Security Administration) and the Department of Labor.[3] Part B of the Act, covering claims filed between December 31, 1969 and June 30, 1973, is administered by the Social Security Administration. *See* 30 U.S.C. §§ 921–925. Part B incorporates a

number of provisions of the Social Security Act. *See* 30 U.S.C. § 923(b). Part C, which covers claims filed on or after January 1, 1974, is adjudicated by the Department of Labor. *See* 30 U.S.C. §§ 931–945. Part C incorporates portions of the Longshore and Harbor Workers' Compensation Act. *See* 30 U.S.C. § 932(a). Additionally, Part C also incorporates, "to the extent appropriate," Part B of the Act. *See* 30 U.S.C. § 940. Accordingly, the Social Security Act, to the extent appropriate, is incorporated in Part C of the BLA via Part B.

Pursuant to § 413(b) of the BLA, § 204 of the Social Security Act is applicable "with respect to a miner, widow, child, parent, brother, sister, or dependent, as if benefits under [Part B] were benefits under Title II [of the Social Security Act.]" 30 U.S.C. § 923(b). Section 204(d) of the Social Security Act governs the disbursement of any disability benefit payments due at the time of the claimant's death. This provision, entitled "Payment to survivors or heirs when eligible person is deceased," describes the descending level of priority of seven classes of persons who may receive any outstanding benefits. *See* 42 U.S.C. § 404(d)(1)–(7).

Under § 204(d) of the Social Security Act, the first three eligible classes' entitlement to the benefits is contingent upon their own right as survivors of the deceased beneficiary. *See* 42 U.S.C. § 404(d)(1)–(3). The next three classes take independent of their eligibility to receive benefits in their own right. *See* 42 U.S.C. § 404(d)(4)–(6). Lastly, if there is no surviving spouse, children, or parents, the legal representative of the beneficiary's estate receives the benefits for disbursement. *See* 42 U.S.C. § 404(d)(7). A member of any of the enumerated classes has standing to pursue the deceased beneficiary's benefits. *See, e.g., Ewing v. Gardner,* 185 F.2d 781, 784 (6th Cir.1950), *rev'd in part,* 341 U.S. 321, 71 S.Ct. 684, 95 L.Ed. 968 (1951).

■■ Based upon this statutory backdrop, we find that the Department of Labor did not err when it adopted § 204 of the Social Security Act as a mechanism to disburse an

---

3. Part A of the BLA consists principally of statements of congressional purpose and definitions.

eligible miner's outstanding benefits upon the miner's death. *See* 20 C.F.R. § 725.545(c).[4] The language of § 725.545(c), which was promulgated to implement Part C of the BLA, essentially mirrors the language provided both under the Social Security Act and the regulations promulgated under Part B of the BLA. *See* 42 U.S.C. § 404(d); 20 C.F.R. § 410.570.[5] Consistent with § 204(d) of the Social Security Act, eligibility under the first three subsections of § 725.545(c) is contingent upon personal entitlement to survivor's benefits. *See* § 725.545(c)(1–3). Additionally, similar to the remaining subsections of § 204(d), § 725.545(c)(4–7) of the BLA is not contingent upon personal entitlement to survivor's benefits. If no one is entitled to receive survivor's benefits, the BLA regulation looks to the next of kin; the surviving spouse takes first, followed by children and parents. *See* § 725.545(c)(4–6). The legal representative of the miner's estate receives payment if no one else is entitled to collect the deceased miner's benefits. *See* § 725.545(c)(7).

In sum, we find that the descending level of eligible heirs entitled to receive any outstanding benefits owed at the time of a miner's death, as set forth under § 725.545(c), furthers the purpose behind the Act. The Department of Labor did not act arbitrarily when it set forth this provision. Rather, it properly incorporated a provision of the Social Security Act that addresses an analogous issue; who is entitled to receive outstanding Social Security disability benefits upon the death of the disabled individual.

We agree with our sister circuit's observation that "[u]nlike a survivor's benefit, which is the personal claim of the dependent spouse, child, or parent, the miner's claim for underpayment of benefits during his life passes by a quasi-inheritance system." *Charles v. Director, OWCP*, 1 F.3d 251, 254 (4th Cir.1993). In view of the statutory authority set forth above, we believe that Congress intended that a perfected right to benefits should not abate upon the demise of the eligible miner and his dependents. Rather, the pertinent provisions allow the miner's benefits be paid to certain eligible relatives, or disbursed to the miner's legal representative to distribute to the estate. We note that Webb's son is not attempting to recover survivor's benefits, that is, receive compensation for the miner's death, but rather, is merely collecting the payments *owed to Webb* prior to his death. As such, no tenable argument exists that this distribution scheme is incon-

---

4. Section 725.545(c) provides:

If an individual to whom an underpayment was made dies before receiving payment of the deficit or negotiating the check or checks representing payment of the deficit, such payment shall be distributed to the living person (or persons) in the highest order of priority as follows:

(1) The deceased individual's surviving spouse who was either:

(i) Living in the same household with the deceased individual at the time of such individual's death; or

(ii) In the case of a deceased miner, entitled for the month of death to black lung benefits as his or her surviving spouse or surviving divorced spouse.

(2) In the case of a deceased miner or spouse his or her child entitled to benefits as the surviving child of such miner or surviving spouse for the month in which such miner or spouse died (if more than one such child, in equal shares to each such child).

(3) In the case of a deceased miner, his parent entitled to benefits as the surviving parent of such miner for the month in which such miner died (if more than one parent, in equal shares to each such parent).

(4) The surviving spouse of the deceased individual who does not qualify under paragraph (c)(1) of this section.

(5) The child or children of the deceased individual who do not qualify under paragraph (c)(2) of this section (if more than one such child, in equal shares to each such child).

(6) The parent or parents of the deceased individual who do not qualify under paragraph (c)(3) of this section (if more than one such parent, in equal shares to each such parent).

(7) The legal representative of the estate of the deceased individual as defined in paragraph (e) of this section.

5. Only § 725.545(c)(7) differs slightly from the statutory language provided under Section 204(d)(7) of the Social Security Act ("SSA"). The SSA refers only to the "legal representative of the deceased individual, if any." 42 U.S.C. § 404(d)(7). Section 725.545(c)(7)'s definition of legal representative is broader, including both "the executor or administrator of the estate ... [and] an individual, institution or organization acting on behalf of an unadministered estate...." 20 C.F.R. §§ 725.545(c)(7) and 725.545(e).

sistent with the BLA. Indeed, the coal mining companies would effectively frustrate the purpose of the Act if they were able to avoid making the payments owed to a disabled miner simply because he died before receiving payment in full.

Therefore, we agree with the ALJ's assertion that a person proceeding as a successor in interest to the original miner is not required to show dependency pursuant to 20 C.F.R. § 725.360(b). As the Fourth Circuit succinctly stated: "[i]f a miner dies before receiving black lung benefits due him on a claim he has already filed, the benefits are payable to certain persons in a descending level of priority. 20 C.F.R. § 725.545(c)." *Charles v. Director, OWCP,* 1 F.3d 251, 253 (4th Cir.1993). Thus, we find that Webb's claim did not abate upon his death and therefore, his son, as a surviving child under § 725.545(c)(5), is entitled to collect the payments owed to Webb prior to his death.[6]

### B.

■ For the reasons that follow, we conclude that substantial evidence supports the ALJ's findings and affirm the benefits award.

#### 727.203(b)(2) Rebuttal

Y & O asserts that we must remand to the ALJ to determine whether Webb was physically able to do his usual coal mine work or comparable and gainful work, and thus whether Y & O meets its burden under 20 C.F.R. § 727.203(b)(2). In *York v. Benefits Review Bd.,* 819 F.2d 134 (6th Cir.1987), this court held that it was error for the ALJ to find (b)(2) rebuttal merely by finding that the miner was not totally disabled by his respiratory impairment. The court found that the miner's total disability included his back

problems, bronchitis and other physical impairments. Accordingly, the *York* court held that evidence showing that the miner was not totally disabled solely by his respiratory impairment "does not prove that York is able to do his usual coal mine work or comparable work." *York,* 819 F.2d at 137.[7]

It is undisputed that the ALJ merely observed that Webb was deceased and, in any event, disabled when he died. The Board held that this finding was inadequate, but held that the error was harmless because the medical evidence was *legally* insufficient to rebut the presumption. We agree. "If the outcome of a remand is foreordained, we need not order one." *Sahara Coal Co. v. Office of Workers' Compensation Programs,* 946 F.2d 554, 558 (7th Cir.1991). Here, Y & O has presented *no* evidence that Webb could do his coal mine work (motorman) or comparable and gainful employment. Indeed, all the doctors testified Webb was totally disabled, albeit they disagreed as to the source of the disability.

#### 727.203(b)(4) Rebuttal

■ Y · & O contends that no evidence could outweigh the x-ray reading of no medical pneumoconiosis and therefore a 20 C.F.R. § 727.203(b)(4) rebuttal is warranted. Under this subsection, the interim presumption is rebutted, if, after a review of all relevant medical evidence, "[t]he evidence establishes that the miner does not, or did not, have pneumoconiosis." Section 727.203(b)(4). We summarily reject Y & O's flawed argument. Negative x-rays are not sufficient to rebut the interim presumption. *Peabody Coal Co. v. Holskey,* 888 F.2d 440, 442 (6th Cir.1989)(positive x-rays are not required to find disabling pneumoconiosis).[8]

Here, the ALJ found that the reports of Dr. Carneiro and Dr. Kress showed some

---

6. Although the record does not reveal the identity of Fred Webb III's siblings, referring only to "brothers and sisters," we note that Webb's benefits should be shared equally by any surviving children. 20 C.F.R. § 725.545(c)(5).

7. Y & O contends that this court should reverse *York v. Benefits Review Bd.,* 819 F.2d 134 (6th Cir.1987). This court does not have such power. *United States v. Sonagere,* 30 F.3d 51, 54 (6th Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 531, 130 L.Ed.2d 434 (1994). Alternatively, Y & O urges us to adopt the rule set forth by other

circuits, *Freeman United Coal Mining Co. v. Foster,* 30 F.3d 834, 839 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 1399, 131 L.Ed.2d 287 (1995) and *Grigg v. Director, OWCP,* 28 F.3d 416, 419 (4th Cir.1994). The Sixth Circuit's holding in *York* is contrary to that posited in *Foster* and *Grigg.* As we indicated above, we do not have the power to depart from *York.*

8. Under the Act, pneumoconiosis is defined as:

a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary

"chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to or significantly aggravated by dust exposure and coal mine employment" and therefore concluded that Y & O did not establish (b)(4) rebuttal. Upon our careful review of the record, we conclude that the ALJ's finding is supported by substantial evidence.

Dr. Kress testified that Webb had chronic bronchitis which caused some obstructive ventilatory impairment. He also stated that he could not "exclude the possibility that his work environment in the mines may be a significant contributing factor to his obstructive impairment." (J.A. at A–39.) Dr. Kress also indicated that Webb "had left coal mining in 1976 and I saw him in 1980. Historically he indicated to me that his cough had significantly improved since he left coal mining. This would suggest that his dust exposure while he was working was a contributing factor in his chronic bronchitis." (J.A. at 117.) The medical evidence supports a finding of pneumoconiosis as defined under the Act; "a disease 'arising out of coal mine employment' includes any chronic pulmonary disease resulting in respiratory or pulmonary impairment *significantly related to, or aggravated by, dust exposure in coal mine employment.*" 20 C.F.R. § 727.202 (emphasis added).[9] Therefore, upon review of all relevant medical evidence, we find that the ALJ properly concluded that there was no persuasive evidence establishing the absence of pneumoconiosis.

### 727.203(b)(3) Rebuttal

■ We also reject Y & O's contention that the ALJ erroneously found that there was insufficient evidence to establish (b)(3)

rebuttal. Specifically, this subsection permits rebuttal of the interim presumption if "[t]he evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment." 20 C.F.R. § 727.203(b)(3). On rebuttal, the burdens of production and persuasion shift to the employer. *Youghiogheny & Ohio Coal Co. v. McAngues,* 996 F.2d 130, 133 (6th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 683, 126 L.Ed.2d 650 (1994). Accordingly, an employer must prove pneumoconiosis did not partially or totally cause the miner's disability. *Id.* at 134. Thus, if pneumoconiosis is at least a contributing cause to a miner's total disability, he is conclusively entitled to benefits. *Id.* at 134–35; *Gibas v. Saginaw Mining Co.,* 748 F.2d 1112, 1120 (6th Cir.1984), *cert. denied,* 471 U.S. 1116, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985).[10]

The ALJ determined that Y & O failed to prove that Webb's disability did not partially result from his mining employment. We believe the ALJ properly acted within his province as a fact finder. The ALJ found that the medical evidence prevented Y & O from satisfying its burden to show coal mine employment was not a contributing cause to Webb's disability. Upon review of the relevant medical reports, we find that the ALJ's finding is supported by substantial evidence. As such, Y & O failed to establish that Webb's disability did not arise in whole or in part out of Webb's coal mine employment.

### III.

For the reasons stated above, we **AFFIRM** the Board's award of benefits.

---

impairments, arising out of coal mine employment.... For purposes of this definition, a disease "arising out of coal mine employment" includes any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or aggravated by, dust exposure in coal mine employment. 20 C.F.R. § 727.202.

9. Further, Y & O's suggestion that Webb's cough was not significant is not supported by the record. Although Webb indicated that his cough seemed to improve after he left the coal mines, none of the medical reports indicated that

Webb's chronic respiratory condition was improving. Thus, the only "evidence" supporting Y & O's argument is the nonmedical subjective opinion of Webb.

10. "An employer cannot rebut the presumption of total disability by showing a second disability that is entirely independent of a claimant's disabling pneumoconiosis." *Youghiogheny & Ohio Coal Co. v. McAngues,* 996 F.2d 130, 135 (6th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 683, 126 L.Ed.2d 650 (1994).