74 F.3d 1240
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
In the Matter of Susie CARTWRIGHT, (Widow of Homer
Cartwright), Petitioner,
v.
ISLAND CREEK COAL COMPANY; Old Republic Insurance Company;
Director, Office of Workers' Compensation
Programs, United States Department of
Labor, Respondents.
 No. 94-3858.
 United States Court of Appeals, Sixth Circuit.
 Jan. 3, 1996.
 
 Before: JONES, DAUGHTREY and PHILLIPS*, Circuit Judges.
 PHILLIPS, Senior Circuit Judge:
 
 
 1
 Susie Cartwright petitions for review of a final decision of the Benefits Review Board (BRB) which reversed the decision of an Administrative Law Judge (ALJ) that had awarded her survivor's benefits under the Black Lung Benefits Act, 30 U.S.C. Sec. 901 et seq. We hold that the BRB erred in failing to affirm the ALJ's award of benefits, though on different grounds than those relied upon by the ALJ. Accordingly, we vacate and remand for an award of appropriate survivor's benefits.
 
 I.
 
 2
 Petitioner Susie Cartwright's husband, Homer Cartwright (Homer), worked as a coal miner for respondent Island Creek Coal Company (the employer) for twenty-six years, from 1949 until his death in 1975 at the age of fifty. Although Homer's death was caused by electrocution on the job, Susie applied for survivor's benefits under the Black Lung Benefits Act shortly after his death, on the theory that Homer had been totally disabled by pneumoconiosis at the time of his death though his death was not caused by pneumoconiosis. Representing herself before an ALJ, she conceded that her husband's death was not caused by any black lung disability he might have borne, but she gave detailed anecdotal evidence of his breathing difficulties in the last years of his life as proffered proof that he was then totally disabled as a result of pneumoconiosis.
 
 
 3
 We had through [sic] brick under the head of our bed so he could breath at night with an extra two pillows on the bed. He was practically sitting up in the bed to breath. He coughed all night, all day, he worked third shift. Always worked third shift. He slept during the daytime, he continually coughed. He had to get out of bed to come, maybe to the living room, see we didn't have air conditioning to get air to breath. The man, he did have a breathing problem. He coughed continuously. He coughed up black mucous. Coal dust from the lung. And he sweated a lot. Profusely.... He couldn't stop working at Island Creek Coal Company. He had his four children to support and my four, together we had the eight children. Therefore, he didn't have time to say I can't breath today, Sue, you know, I've got to stay home....
 
 
 4
 So this is what he did. No man with any respect that has responsibilities as he had is going to stay home just because he himself knows that he has a lung problem. You just take it day by day and do what you have to do.
 
 
 5
 J.A. 16-17.
 
 
 6
 One of Homer's fellow employees also testified to Homer's inability to do his job in normal fashion towards the end of his life. Marion Morris testified that, when Homer made his rounds as a fire boss, he would begin to tire and start to gasp after walking as little as 150 feet in the mines. He would often miss three or four days of work in a month. And Morris would help Homer out by doing some of his rounds for him while Homer stayed behind at Morris's pumping station. According to Morris, Homer had wanted to quit work for health reasons but was trying to hang in until the next contract came into effect in the hope that he would be able to get better retirement benefits. J.A. 289-93.
 
 
 7
 Medical records were also offered in support of the claim. They revealed that in addition to an amputation of his left hand and a severe knee injury several years before his death, Homer had one episode of coughing up blood in 1962 and three x-rays between 1971 and 1975 that were ultimately read positive for pneumoconiosis. They also included two readings of these x-rays that found evidence of "mild interstitial fibrosis" throughout both lungs. J.A. 240, 245. The 1962 episode led to admission to the hospital where tests indicated bronchitis but no other lung problems. J.A. 91, 208-09, 218, 226-27. The 1971 x-ray yielded "some evidence of early dust retention, category 1 simple pneumoconiosis ..." J.A. 130. The two 1975 x-rays were not read positive by the original doctor, but they were read positive in 1984 by a Dr. Faxon Payne, a board-certified B-reader. J.A. 268-69.
 
 
 8
 On the other hand, there was opposing evidence before the ALJ that Homer had never complained to a doctor of significant respiratory difficulties after 1962, and physical exams repeatedly had found his lungs and breathing capacity within normal ranges right up to the year of his death. Also, a reading of a 1974 x-ray deemed his lungs clear. Without benefit at the time of Dr. Payne's re-readings, two doctors in 1984 had reviewed Homer's medical records. Dr. Richard O'Neill reported then that "preponderant evidence" indicated that Homer did not have pneumoconiosis, that "normal clinical examination of the lungs and the ventilatory study" yielded no evidence of "respiratory impairment," and that Homer had had the "respiratory functional capacity" to do his work at the time of his death. J.A. 113. Dr. George Kress concluded that there was insufficient evidence in the medical record to find pneumoconiosis. J.A. 96-99. In 1989, however, in light of Dr. Payne's re-readings, Dr. Kress determined that there was now enough evidence to support a finding of pneumoconiosis but still concluded that there was no evidence in the medical record of whole-man disability from pneumoconiosis or from occupational dust exposure. J.A. 281. Similarly, Dr. Gregory Fino's 1989 review of Homer's medical records, including Dr. Payne's re-readings, concluded that while Homer did have "radiographic simple pneumoconiosis based on the B-readings," there was no evidence of any chronic respiratory problem in the medical record: "It is clear that this man did not suffer from any type of lung problem prior to his death." His pneumoconiosis, according to Fino, was insufficient "to cause any symptoms or respiratory impairment." And his pulmonary function studies clearly showed the "lung capacity to perform any duty in the mines." Finally, Fino had found no evidence in the medical record to show any whole-man disability at all. J.A. 270-71.
 
 
 9
 Assessing this evidence, an ALJ found the interim presumption provided by 20 C.F.R. Sec. 727.203(a)(1) invoked by x-ray evidence which established the existence of pneumoconiosis at the time of Homer's death. Because Homer had then worked in coal mine employment for more than 10 years, this gave rise under the regulation to a rebuttable presumption that Homer had been totally disabled due to pneumoconiosis at the time of his death. Id. Turning then to the possibility of rebuttal of the presumption under subsections (b)(1), (b)(2), (b)(3) or (b)(4) of Sec. 727.203,[1] the ALJ found both (b)(1) and (b)(4) legally inapplicable, and opined that the employer's evidence was insufficient to rebut under either (b)(2) or (b)(3): under (b)(2), because there was no affirmative evidence that Homer was doing or had been able to do his usual coal mine work at the time of his death; under (b)(3), because, according to the ALJ, Homer's death by electrocution had arisen out of coal mine employment (presumably because it occurred while he was so engaged). Because he determined that the interim presumption had not been rebutted, the ALJ then awarded survivor benefits to the claimant. J.A. 316, 318.
 
 
 10
 On appeal by the employer, the BRB, after noting that the pro se claimant was not participating, affirmed the unchallenged invocation of the (a)(1) interim presumption, but reversed and remanded for reconsideration of the employer's rebuttal evidence. First, it ordered the ALJ to consider whether the employer had rebutted under (b)(1) by showing that Homer had been doing his usual work at the time of his death. J.A. 323. Turning to (b)(2), the BRB noted that the ALJ had found that there was no evidence of Homer's ability to do his usual coal mine work when, in fact, there was relevant medical evidence in the record from Drs. Fino, Kress, and O'Neill on that point. The Board, therefore, directed the ALJ to consider whether those doctors' opinions showed "that the miner was not disabled for any reason and could perform his duties as a miner ..." J.A. 324. In reconsidering the issue of rebuttal under (b)(3), the ALJ was instructed that the question was not whether Homer's death by electrocution had arisen out of coal mine employment but whether the employer had "established that pneumoconiosis played no part in causing the miner's total disability or death." J.A. 324. The fact that Homer's death by electrocution was job-related was irrelevant; the proper question under (b)(3) was whether his death or disability was in any part attributable to pneumoconiosis.
 
 
 11
 On remand, the ALJ found that the fact that Homer had continued to report to work up until the day of his death and the conclusion of Dr. Fino that the medical record showed no whole-man disability were not sufficient to rebut the (a)(1) interim presumption under (b)(1) or (b)(2). The employer's burden was to show affirmatively that Homer had been able to do his usual work at the time of his death, not merely that his medical records failed to prove otherwise. The opinions of Drs. Kress and O'Neill addressed only respiratory not whole-man disability and so were patently inadequate under (b)(1) and (b)(2). Susie Cartwright's "credible lay testimony" as to Homer's breathing difficulties bolstered this conclusion. J.A. 328-29.
 
 
 12
 Looking to (b)(3), however, the ALJ interpreted the BRB's correction of his error in focusing on the cause of Cartwright's death rather than his presumed disability at death as effectively an instruction to find (b)(3) rebuttal established. Accordingly, he denied benefits on that sole basis. J.A. 329-30. He did not address the actual question remanded for his consideration: whether the employer's evidence sufficed under (b)(3) to rebut the presumption that Cartwright's presumed total disability at the time of death was caused by pneumoconiosis.
 
 
 13
 Two days later, however, the ALJ reconsidered his ruling and, looking to Part 718 of the regulations, awarded benefits on the basis of the almost conclusive presumption in 20 C.F.R. 718.306, that the survivors of miners who, before mid-1971 had worked in coal mine employment for at least twenty-five years, were entitled to benefits. This ruling was based on an erroneous factual premise, for Homer had worked for only twenty-two years before 1971. Consequently, on the employer's appeal, the BRB again reversed the ALJ and, in effect, denied benefits.[2] J.A. 340-41. In its decision, the BRB addressed only the ALJ's error in awarding benefits under the Part 718 presumption. It did not address the propriety of the ALJ's earlier denial of benefits on the basis of (b)(3) rebuttal under Part 727.
 
 
 14
 Petitioner, continuing to proceed pro se, now petitions this court for review of the BRB's decision arguing that she is entitled to benefits under Parts 725 and 727.
 
 II.
 
 15
 Petitioner concedes that the BRB correctly found error in the ALJ's award of benefits under the Part 718, twenty-five year presumption of entitlement. She contends, however, that had the BRB addressed the claim as one properly assessed under Part 727 of the regulations--as both it and the ALJ originally had done--it should have found the ALJ's denial of benefits erroneous, and that the BRB's failure to do so was error which we should correct.
 
 A.
 
 16
 This contention presents a threshold procedural question of the permissible scope of our review. Given the muddled course of proceedings that brings the case to us, involving throughout a claimant proceeding pro se through the maze, it is a serious question. We address it first.
 
 
 17
 The order we directly review is that of the BRB reversing the ALJ's award of benefits. The only stated ground for that order was the ALJ's erroneous application of Part 718's twenty-five year presumption--an error that is now conceded by petitioner. Not addressed at all were any of the ALJ's rulings made when properly addressing the claim under Part 727 in obedience to the BRB's first order remanding the claim for reconsideration under that regulatory framework. Two of those ALJ rulings favored the petitioner: that rebuttal was not established under either subsection (b)(1) or (b)(2) of Sec. 727.203. The third, and dispositive one, however, was unfavorable to petitioner and led to the ALJ's original denial of her claim: that rebuttal was established under (b)(3).
 
 
 18
 On the employer's appeal to the BRB from the ALJ's later order erroneously awarding benefits under the Part 718 presumption, the petitioner might have, but did not, argue that the ALJ's award might nevertheless be upheld on the alternative basis that it was established under Part 727. This would have required affirming the ALJ's finding of no-rebuttal under (b)(1) or (b)(2), and reversing as erroneous the finding of rebuttal under (b)(3).
 
 
 19
 In her two-page form brief in support of her petition for review by this court, petitioner simply requests that we consider the claim as one appropriately to be decided under Part 727. Implicit in this general argument is the more specific one that she might have, but did not, explicitly raise before the BRB: that the ALJ erred in denying her claim on the basis of (b)(3) rebuttal under the Part 727 regulation.
 
 
 20
 The problem for us is whether, under these circumstances, we may consider such an argument when it was not formally raised before the BRB. Under the circumstances, we conclude that we may properly do so. We see no unfairness to the employer in doing so, for recognizing the relevance of the issues, it has briefed and argued them below and had adequate notice of their possible salience on petition for review in this court. On the other hand, it would not seem in the interests of justice to hold this pro se claimant to awareness, at peril of waiver, that, having prevailed before the ALJ, she might as appellee before the BRB have advanced alternative grounds for affirming her award. Cf. 20 C.F.R. Secs. 802.202, 211(e) (BRB authorized to excuse pro se claimants from generally applicable procedural requirements).
 
 
 21
 Accordingly, in reviewing the BRB's decision here we consider it appropriate, as petitioner urges, that we address the question not considered by the BRB, whether if rightly assessed under Part 727 of the regulations, the claim was properly denied by the ALJ. See Youghiogheny & Ohio Coal Co. v. McAngues, 996 F.2d 130, 135 (6th Cir.1993) (court of appeals "should focus on whether the ALJ--not the Board--had substantial evidence on which to base its decision"). This requires that we determine whether the ALJ properly found rebuttal not established under either (b)(1) or (b)(2), but established under (b)(3). We take (b)(1) and (b)(2) together, then turn to (b)(3).
 
 B.
 
 22
 Under (b)(2), an employer may rebut the interim presumption if "[i]n light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work ..." In York v. Benefits Review Board, 819 F.2d 134 (6th Cir.1987), we held that (b)(2) rebuttal required the employer to show "that the miner is able to do his usual coal mine work or comparable and gainful work. [It] cannot merely rely upon a showing the miner was not totally disabled by the respiratory impairment alone. Rather, [it] must show the miner is not disabled." York, 819 F.2d at 138. See also Youghiogheny & Ohio Coal Co. v. Webb, 49 F.3d 244, 249 (6th Cir.1995). Particularly where, as here, the claim is for survivor benefits, rebuttal under (b)(1) is closely related to that required for (b)(2) rebuttal, requiring proof that the miner was, in fact, doing his usual coal mine work at the time of his death. If it is proved that he was then in fact doing the work, it is perforce proved that he was capable of doing it. The first issue then is whether substantial evidence supports the ALJ's determination, when properly assessing the claim under Part 727, that the employer had failed to establish that Homer was doing or was capable of doing his usual coal mine work at the time of his death.
 
 
 23
 The ALJ correctly understood that the sum of the employer's rebuttal evidence under (b)(1) and (b)(2) was the following: the fact that Homer had continued to work until the day of his death; Homer's medical records; and the reviews of those medical records conducted by Drs. Fino, Kress, and O'Neill. These reviewing doctors offered the following opinions: O'Neill believed that Homer had had the "respiratory functional capacity" to do his work. J.A. 113. Fino conceded that Homer had had radiographic pneumoconiosis but insisted that he had not suffered "from any type of lung problem prior to his death," that he had had "the lung capacity to perform any duty in the mines," and that the medical record revealed no evidence of any whole-man disability either. J.A. 270-71. And Kress believed that, even if Homer had had pneumoconiosis, the medical record contained no evidence of whole-man disability from pneumoconiosis or from occupational dust exposure. J.A. 281.
 
 
 24
 The ALJ found these medical opinions inadequate to rebut under (b)(1) or (b)(2), and we conclude that that determination is supported by substantial evidence. Only one of the reviewing doctors, Dr. Fino, addressed the question of whole-man disability, offering his opinion that there was no evidence in the record of such disability. The other doctors simply concluded that there was no respiratory disability. On the employer's side, there is the additional fact that Homer had continued to work as a fire boss until his death. But the employer offered no evidence that Homer was, in fact, satisfactorily carrying out or able to carry out his "usual" duties at the time of his death. And Dr. Fino's opinion about Homer's whole-man disability is in tension with the testimony of Susie Cartwright and Homer's workmate, Marion Morris, that Homer had had severe respiratory difficulties in his last years and that he was no longer able fully to perform his duties without help from Morris. The ALJ was entitled to find such eye-witness lay testimony credible and thus to conclude that the employer had failed to carry its burden of rebuttal under either (b)(1) or (b)(2).
 
 C.
 
 25
 As indicated in our recitation of the procedural history of this case, when the BRB vacated and remanded the ALJ's original determination that (b)(3) rebuttal had not been established, the BRB instructed the ALJ that the proper question was not whether Homer's death had been caused in whole or in part by pneumoconiosis, but whether his presumed total disability at death had been so caused.[3]
 
 
 26
 Regrettably, the ALJ apparently misconstrued the BRB's mandate as a flat reversal of his determination, and accordingly found (b)(3) rebuttal established without addressing the specifically remanded issue whether the employer had sufficiently proven that pneumoconiosis played no part in causing Homer's presumed total disability at death. On appeal, the BRB, which addressed only the ALJ's error in awarding benefits under inapplicable Part 718, did not address this failure, as it should have done. Because, as noted, our review of BRB decisions essentially looks through them to the ALJ decision under review, we may address this patent error of misapprehension by the ALJ though the BRB did not.
 
 
 27
 And, because the ALJ's error in failing to address the (b)(3) issue as instructed by the BRB is patent, and the BRB's error in failing to address it equally so, the only question for us is the appropriate remedy. We might of course remand, with directions for ALJ consideration of the issue as originally properly instructed by the BRB. Under most circumstances that would be the appropriate remedy. Here, however, we do not believe such a further step in the resolution of this now twenty-year old claim is necessary nor required in the interests of justice. We conclude instead that given the ALJ's substantially supported findings that the employer's evidence failed to rebut the interim presumption under either (b)(1) or (b)(2), the same evidence (and lack thereof) suffices as a matter of law to compel a further finding that the employer has not proved that, under (b)(3), "pneumoconiosis played no part in causing [Homer Cartwright's] disability." Gibas v. Saginaw Mining Co., 748 F.2d 1112, 1120 (6th Cir.1984); See also Peabody Coal Co. v. Greer, 62 F.3d 801, 804 (6th Cir.1995).
 
 
 28
 In finding rebuttal under (b)(1) and (b)(2) not established, the ALJ necessarily credited the testimony of Homer's wife and fellow-worker that he had serious respiratory problems in the months just preceding his death over the medical opinions of non-treating physicians that his records did not indicate any such disabling condition. That finding, essentially one of credibility of eye-witnesses, is supported by substantial evidence. When considered in conjunction with the established, and conceded, fact that Homer had pneumoconiosis at the time of his death, the record as now constituted would not support the conflicting finding necessary to rebuttal under (b)(3) that pneumoconiosis played "no part" in his disability.
 
 
 29
 Because the outcome is thus compelled by the record, we conclude that (b)(3) rebuttal could not be established, and that petitioner is therefore entitled to an award of benefits in the proper amount. See Webb 49 F.3d at 249.
 
 III.
 
 30
 Accordingly, we vacate the BRB's decision and remand with instructions to see to the entry of such an award.
 
 
 31
 SO ORDERED.
 
 
 
 *
 The Honorable J. Dickson Phillips, Jr., United States Circuit Judge of the United States Court of Appeals for the Fourth Circuit, sitting by designation
 
 
 [1]
 20 C.F.R. Sec. 727.203(b) provides that "... [t]he presumption in paragraph (a) ... shall be rebutted if:
 (1) The evidence establishes that the individual is, in fact, doing his usual coal mine work or comparable and gainful work ...; or
 (2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work ...; or
 (3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment; or
 (4) The evidence establishes that the miner does not, or did not have pneumoconiosis."
 
 
 [2]
 The BRB's decision did not state in terms that it was denying benefits, only that it was reversing the ALJ. But everyone has treated the decision as a final decision denying benefits
 
 
 [3]
 This was true only because this claim for survivor's benefits was filed before January 1, 1982, at which time it was only necessary to prove that at the date of his death the deceased miner was totally disabled and that the disability, not necessarily the death, was caused at least in part by pneumoconiosis. With respect to later-filed claims, the claimant must prove that the miner's death was caused in part at least by pneumoconiosis. See 20 C.F.R. Sec. 725.212