98 F.3d 1343
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Franklin D. WRIGHT, Petitioner,
v.
JARISA, INC.; Kentucky Coal Producers Self-Insurance Fund;
and Director, Office of Workers' Compensation
Programs, United States Department of
Labor, Respondents.
 No. 95-4036.
 United States Court of Appeals, Sixth Circuit.
 Oct. 4, 1996.
 
 On Petition for Review of an Order of the Benefits Review Board, United States Department of Labor, No. 95-0111BLA.
 Ben.Rev.Bd.
 REVIEW DENIED.
 Before: NELSON, MOORE, and COLE, Circuit Judges.
 OPINION
 MOORE, Circuit Judge.
 
 
 1
 In this claim under the Black Lung Benefits Act, 30 U.S.C. § 901-945, petitioner Franklin D. Wright challenges the decision of the Administrative Law Judge (ALJ) denying him disability benefits. Although we agree with Wright that his case presents a close factual call, we conclude that the ALJ's denial of benefits is supported by substantial evidence. We deny the petition.
 
 
 2
 * Wright, a coal worker for over thirteen years, applied for black lung disability benefits in 1992. Although the Department of Labor district director ruled in his favor after an informal conference, the ALJ overturned that determination after a formal hearing in 1994. The Benefits Review Board affirmed, finding substantial evidence to support the conclusion that Wright had failed to show the existence of pneumoconiosis (black lung disease) by a preponderance of the evidence. Wright then initiated this petition.
 
 II
 
 3
 Wright's first argument is that the ALJ erred in evaluating the submitted x-ray evidence. The ALJ ultimately ruled that the evidence was evenly balanced, with specially qualified radiologists (" 'B' readers") interpreting three chest x-rays as being positive for pneumoconiosis, three x-rays as being negative, and giving equally divided interpretations on a seventh x-ray. Accordingly, the ALJ found that Wright had failed to meet his burden of proof under Director, Office of Workers' Compensation Programs v. Greenwich Collieries, 114 S.Ct. 2251, 2259 (1994). Wright now disputes this finding on one of the three negative x-rays (the "December 3 x-ray"), asserting that there were more positive than negative interpretations of it by equally qualified "B" readers. As a result, Wright claims it should have been found positive instead of negative for pneumoconiosis.
 
 
 4
 In our view, substantial evidence would support a ruling that goes either way on the December 3 x-ray. Two "B" readers had interpreted the film to be positive, and two had interpreted it to be negative. The fifth "B" reader was Dr. Glen Baker, who had initially interpreted the x-ray film to be positive, but then apparently changed his mind. In a letter to the U.S. Department of Labor, written after his initial medical report, Baker stated:
 
 
 5
 I have reviewed the x-ray of Franklin Wright which I originally interpreted as 1/0. The film has subsequently been read by two other "B" readers. On review of the film, I still feel that there are opacities present, but in light of their reading, perhaps the degree of profusion is only 0/1, thereby negative for pneumoconiosis.[1]
 
 
 6
 Baker Letter to U.S. Dept. of Labor, January 27, 1993. It appears from this letter, which we have quoted in full, that Baker was quite willing to agree with the other two interpretations and change his interpretation of the film from a 1/0 to a 0/1. By explaining that he had "originally interpreted" the x-ray to be positive, he suggested that he no longer held such a view. Baker was not finished confusing administrators, however. In a subsequent deposition, he responded to cross-examination as follows:
 
 
 7
 Question: What do you mean, you didn't change your reading?
 
 
 8
 Baker: I still read it as 1/0. I said, perhaps, the film is in actuality only a 0/1 but my impression is still a 1/0.
 
 
 9
 Question: Why would you say that it may in actuality be 0/1 if your impression was that it was a 1/0[?]
 
 
 10
 Baker: Because it is very tough sometimes to figure out a 1/0 and a 0/1.
 
 
 11
 Baker Dep. at 16. From this, it appears that Baker attempted to return to his "original" interpretation of the December 3 x-ray as being positive for pneumoconiosis.
 
 
 12
 While it is true that Baker ended up favoring a positive reading of the December 3 x-ray, even these last statements of his at the deposition are equivocal at best. He continued to note that the film could "in actuality" show only a negative reading, and he acknowledged that it was "very tough" to figure out in this instance. Moreover, if it is indeed the case that his reading remained unchanged, Baker failed to explain why he had taken the trouble to write his unsolicited, three-sentence letter to the Department of Labor, which seemed to set forth a different view of the December 3 x-ray. He failed to explain what possible purpose such a letter might have served. Given the considerable ambiguity in Baker's medical report, letter, and deposition, the ALJ could reasonably have concluded that Baker's various statements supported the interpretations of the two negative "B" readers at least as much as those of the two positive readers. Indeed, it is evidently the interpretations of these two negative readers which prompted Baker to write his mysterious letter in the first place. The prevailing standard of review forbids reversal of the ALJ's decision if it is supported by substantial evidence and is in accordance with applicable law, "even if the facts permit an alternative conclusion." Youghiogheny & Ohio Coal Co. v. Webb, 49 F.3d 244, 246 (6th Cir.1995). Because the ALJ had a sufficient basis for using Baker's statements to credit the two, unequivocally negative readings of the December 3 x-ray more than the two, unequivocally positive readings--and therefore for finding that Wright had failed to show pneumoconiosis by a preponderance of the x-ray evidence--we uphold the ALJ's determination on this issue.
 
 III
 
 13
 Dr. Baker ultimately diagnosed Wright as having "coal workers' pneumoconiosis," based not only on x-ray evidence, but also on complete physical examinations of Wright in 1991 and 1992. Under 20 C.F.R. § 718.201, "coal workers' pneumoconiosis" is one of a number of ailments that count as "legal" pneumoconiosis--that is, pneumoconiosis for purposes of the federal regulations. Wright now argues that the ALJ committed a material error in failing to find explicitly that Baker had diagnosed "legal" pneumoconiosis, but we struggle to see the logic of this argument. Any failure to make express acknowledgment of a diagnosis of "legal" pneumoconiosis--if this can indeed be perceived as a "failure"--can only have been completely harmless in this case. The ALJ specifically cited Baker's diagnosis of coal workers' pneumoconiosis, see Decision and Order, No. 94-BLA-0362 (Sept. 2, 1994), at 10; J.A. at 10, and there is nothing in the ALJ's decision to indicate that he considered coal workers' pneumoconiosis to be anything less than "legal" pneumoconiosis itself. We simply discern no basis for reversal in this argument.
 
 IV
 
 14
 Wright's final contention is that the ALJ erred in discrediting the favorable conclusions of one of Wright's examining physicians, Dr. James Lockey. Lockey's examination did not find coal workers' pneumoconiosis, but his medical conclusions indicated the presence of conditions that would otherwise constitute legal pneumoconiosis. The ALJ ruled, however, that Lockey's conclusions were based on facts that were a "far cry" from reality. Decision and Order, No. 94-BLA-0362, at 12. Wright had told Lockey that he had worked in coal mines for thirty-three years and that he had smoked one and a half packs of cigarettes per day for ten years. In truth, Wright was only credited with thirteen years and three months of employment in coal mines, and he admitted to smoking one pack per day for thirty-nine years. Given these vast discrepancies in Wright's smoking and work history, which undoubtedly had a significant impact on Lockey's evaluation of the etiology of Wright's respiratory and pulmonary problems, the ALJ was entitled to discredit any connection made by Lockey between Wright's work in coal mines and his supposed, current condition. See Creech v. Benefits Review Bd., 841 F.2d 706, 709 (6th Cir.1988) (evaluation based on inaccurate work history could be found by ALJ to be "not 'reasoned' " for purposes of the federal regulation). As a result, we believe that the ALJ's decision to discredit Lockey's diagnosis of legal pneumoconiosis, but at the same time to credit his diagnosis of no coal workers' pneumoconiosis, was supported by substantial evidence.
 
 
 15
 Petition DENIED.
 
 
 
 [1]
 A chest x-ray classified as 1/0 is the earliest diagnosable stage of pneumoconiosis under the federal regulations. A diagnosis of 0/0 or 0/1 is unacceptable as evidence of pneumoconiosis. See 20 C.F.R. § 410.428(a)(1)