Rita A. OUSLEY, Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondent.

No. 00–3352.

United States Court of Appeals, Sixth Circuit.

April 30, 2001.

Before MARTIN, Chief Judge; MOORE, Circuit Judge; O'MALLEY, District Judge.*

## ORDER

Rita A. Ousley (the Claimant), widow of former miner Hermal Ousley (the Miner), petitions for review of the Benefits Review Board's decision and order denying her claim for survivor's benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901–45. The parties have waived oral argument and this panel unanimously agrees that oral argument is not needed in this case. Fed. R.App. P. 34(a).

The Claimant filed her application for benefits with the Department of Labor (DOL) on December 27, 1996, following the December 11, 1996, death of her husband. The DOL denied her claim on December 18, 1997, and, following a formal hearing, an administrative law judge (ALJ) issued a decision and order denying benefits. In accordance with an earlier award of benefits to the Miner while he was alive, the ALJ found that the Miner suffered from pneumoconiosis arising out of his exposure to coal mine dust during his six years as a coal miner. However, the ALJ further found that the Miner's death was not due to pneumoconiosis and, therefore, denied benefits. The Benefits Review Board (Board) affirmed the ALJ's decision and order, despite the Director's motion to remand to the ALJ for further consideration.

In her petition for review, the Claimant argues that the preponderance of the evidence establishes that the Miner's pneumoconiosis contributed to or hastened his death from lung cancer.

■■■■ This court must affirm the Board's decision if the Board has not committed any legal error or exceeded its statutory scope of review of the ALJ's factual determinations. *Glen Coal Co. v. Seals,* 147 F.3d 502, 510 (6th Cir.1998). The court reviews the ALJ's decision only to decide whether it is supported by substantial evidence and is in accordance with the applicable law. *Id.; Peabody Coal Co. v. Greer,* 62 F.3d 801, 804 (6th Cir.1995). Thus, as long as the ALJ's conclusions are supported by the evidence, they will not be reversed, "even if the facts permit an alternative conclusion." *Youghiogheny & Ohio Coal Co. v. Webb,* 49 F.3d 244, 246 (6th Cir.1995). Given this limited scope of review, this court cannot substitute its own judgment for that of the ALJ where the ALJ has carefully considered each part of the evidence. *Knuckles v. Director, OWCP,* 869 F.2d 996, 998 (6th Cir.1989).

Because the Claimant applied for benefits after January 1, 1982, she must establish that the Miner's death was due to pneumoconiosis. *See* 20 C.F.R. § 718.1(a). The criteria for determining whether a miner's death occurred as a result of pneumoconiosis are: (1) whether competent medical evidence establishes that the miner's death was due to pneumoconiosis; (2) whether pneumoconiosis was a substantially contributing cause or factor leading to the miner's death, or death was caused by complications of pneumoconiosis; or (3) whether the presumption set forth in 20 C.F.R. § 718.304 is applicable to the survivor's claim. *See* 20 C.F.R. § 718.205(c)(1)-(3). The presumption found in § 718.304 does not apply to this claim because there is no evidence of complicated pneumoconiosis. Survivors are not eligible for benefits where the principal cause of death is a medical condition not

---

* The Honorable Kathleen M. O'Malley, United States District Judge for the Northern District of Ohio, sitting by designation.

related to pneumoconiosis, unless pneumoconiosis was a "substantially contributing cause" of the death. *See* 20 C.F.R. § 718.205(c)(4). This court has interpreted this regulatory language to encompass situations where pneumoconiosis, even if not a proximate cause of death, actually hastened a miner's death. *See Brown v. Rock Creek Mining Co.*, 996 F.2d 812, 816 (6th Cir.1993).

The Miner's death certificate gave the immediate cause of death as small cell lung cancer. No underlying or other significant conditions were listed. The medical records from his last illness focused principally on the cancer, although his black lung disease was noted in several reports. Dr. Gutterman, the Miner's oncologist, reviewed his records and submitted a letter dated April 8, 1997. In that letter, he stated that the Miner died as a result of his metastatic lung cancer and that he "[did] not believe that Mr. Ousley's previous pulmonary disability as related to Pneumoconiosis contributed to his death." Dr. Gutterman also stated that he did not recommend chemotherapy for the Miner

> because his cancer was advanced into stage IV including involvement of the liver. The response rates in patients with this stage of lung cancer are poor with chemotherapy. There are significant side effects from chemotherapy and I thought the side effects outweighed any brief benefit he might gain from chemotherapy. His previous lung condition did not cause me to withhold chemotherapy.
>
> Therefore, I do not think that his Pneumoconiosis contributed to his death nor to his cancer. I believe he died from his metastatic lung cancer.

Dr. Lance had been the Miner's physician since 1990, treating him for black lung and lower back problems, and last seeing the Miner about two weeks before his can-

cer was diagnosed. Dr. Lance reviewed his records and submitted a letter dated July 18, 1997. He noted the Miner's diagnosed black lung disease in addition to his small cell lung cancer with metastasis to the liver and referred to attached treatment notes which stated that, while hospitalized for cancer, "his COPD would be treated with nebulizers around the clock along with adequate doses of theophylline." Dr. Lance continued,

> I can state with medical certainty that Mr. Ousley's death does qualify as death due to pneumoconiosis. This is where pneumoconiosis was a substantially contributing cause or factor leading to the miner's death or where the death was caused by complications of pneumoconiosis. This is based on the fact that he had a markedly decreased respiratory reserve which was further decreased by his cancer and even further impaired due to the radiation therapy he received, which further decreased his respiratory reserve. It is with certainty that I state that his black lung condition hastened his death.

Finally, the record contains two brief consultative reports prepared by Dr. Sarah Long at the DOL's request. Her initial report stated that she found no medical basis to establish the diagnosis of coal workers' pneumoconiosis and that, in her opinion, pneumoconiosis did not cause, contribute to, or hasten the Miner's death. The DOL requested another opinion from Dr. Long after pointing out that it had previously been established that the Miner did have pneumoconiosis. In her second opinion, dated October 21, 1997, Dr. Long stated that, "[e]ven if we assume that pneumoconiosis had decreased his respiratory reserve, I do not believe that in any way contributed to, caused or hastened his death. The extensive involvement of the carcinoma was the cause of death."

Based upon this evidence, the ALJ found that the Claimant had not established entitlement under § 718.205(c)(1) because the death certificate made no reference to pneumoconiosis. In addition, the ALJ found that the single report by Dr. Lance, claiming that the Miner's death was in some way attributable to pneumoconiosis was inadequately documented and so its conclusion was unsupported. The ALJ concluded that this lack of support rendered Dr. Lance's opinion unreasoned, noting that Dr. Lance "made no mention of how pneumoconiosis had decreased the Miner's respiratory reserve.... Because Dr. Lance does not explain how underlying documentation supports his diagnosis, I find his opinion entitled to little weight on this issue." Instead, the ALJ gave controlling weight to the opinion of Dr. Gutterman, as supported by Dr. Long's second report, that the Miner's extensive carcinoma was the sole cause of the Miner's death. Therefore, the ALJ found that the Claimant had failed to establish entitlement to benefits under § 718.205(c)(2).

■ Both the Claimant and the Director argued to the Board that the ALJ's decision and order should be vacated and the case remanded because the ALJ erred in finding that Dr. Lance's opinion was undocumented. The Board, instead, affirmed the ALJ's decision and order on the ground that the ALJ did not reject Dr. Lance's opinion solely because it lacked underlying documentation. "Rather, the administrative law judge reasonably exercised his discretion as trier-of-fact in finding that the opinion of Dr. Lance was not well reasoned inasmuch as the physician did not explain how his underlying documentation supported his conclusion that pneumoconiosis was a substantially contributing cause of the miner's death."

In her petition for review, the Claimant again argues that the ALJ improperly evaluated Dr. Lance's report and asserts that the Board erred in concluding that the ALJ rejected Dr. Lance's opinion because he found it to be unreasoned rather than undocumented. In his brief, the Director agrees that the ALJ erred in his finding that Dr. Lance's opinion was undocumented and that the Board erred in affirming rather than vacating and remanding the ALJ's decision and order. However, the Director maintains that, rather than reverse the ALJ's order and award benefits, this court should vacate the decision and order and remand for further consideration by the ALJ in light of the underlying documentation supporting Dr. Lance's opinion found in the record as a whole.

We conclude that the ALJ's finding that Dr. Lance's opinion was undocumented is not supported by substantial evidence. The record as a whole documents the Miner's compromised respiratory reserve; in fact, the Miner was awarded benefits on the basis that he was totally disabled from a respiratory or pulmonary impairment arising out of his coal mine employment. This conclusion is supported by the Miner's continued treatment, while hospitalized for his lung cancer, of the chronic obstructive pulmonary disease/black lung which was stated to be secondary to his coal mine employment. Moreover, Dr. Gutterman's statement that the Miner's "previous lung condition did not cause me to withhold chemotherapy" is called into question by his contemporaneous report of July 15, 1996, in which he stated: "I am concerned *because of his other medical problems* that he will not do that well with chemotherapy and his quality of life would not benefit as much" (emphasis added). Those "other medical problems," as listed in the final diagnoses of July 12, 1996, consisted of "hemoptysis, resolving" and "black lung." No other medical conditions were noted in this hospital report pre-

pared a mere three days before Dr. Gutterman's July 15th statement. Finally, a reading of the ALJ's decision and order does not support the Board's conclusion that the ALJ offered an adequate alternative reason for rejecting Dr. Lance's opinion in that it was "unreasoned." Instead, the ALJ noted that where a medical opinion is not supported by the underlying documentation, it is unreasoned. Thus, any conclusion that Dr. Lance's opinion was unreasoned is tied directly to the ALJ's erroneous finding that it was undocumented.

Accordingly, we grant the petition for review. We vacate the decisions below denying benefits and remand the case for further consideration by the ALJ in light of all of the evidence of record, including that submitted with the Miner's claim, which might support Dr. Lance's opinion that the Miner's death was hastened by his pneumoconiosis.