Gladys CHARLES, the Surviving Divorced Spouse of Verdie Charles, on behalf of herself and on behalf of Verdie Charles, Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondent.

No. 91–3028.

United States Court of Appeals, Fourth Circuit.

Argued June 11, 1993.

Decided Aug. 9, 1993.

Leslie Ann Jones, Johnson, Schaaf, Jones & Snelling, Chicago, IL, argued (Thomas E. Johnson, on brief), for petitioner.

Edward Waldman, Office of the Sol., U.S. Dept. of Labor, Washington, DC, argued (David S. Fortney, Deputy Sol. of Labor, Donald S. Shire, Associate Sol. for Black Lung Benefits, Barbara J. Johnson, Counsel for Appellate Litigation, Priscilla Anne Schwab, Office of the Sol., U.S. Dept. of Labor, Washington, DC, on brief), for respondent.

Before HALL and MURNAGHAN, Circuit Judges, and G. Ross ANDERSON, Jr., United States District Judge for the District of South Carolina, sitting by designation.

## OPINION

K.K. HALL, Circuit Judge:

Gladys Charles petitions for review of an order of the Benefits Review Board (BRB) affirming the denial of her claim for her deceased ex-husband's black lung benefits. Because we conclude that the petitioner does not have standing to pursue a claim for underpayments to the miner during the miner's lifetime, we dismiss the petition.

### I.

Verdie Charles worked in the mines for over twenty years between 1940 and 1967. He later moved to Chicago with his wife, petitioner Gladys Charles. The couple divorced on June 11, 1979, after over thirty years of marriage. The Illinois divorce decree ordered Verdie to pay Gladys support of $25 per week for five years, *i.e.*, until June 11, 1984. Verdie quit paying in 1981.

On February 17, 1984, Verdie filed a claim for black lung benefits. His claim was denied on May 31, 1984, and he died of a heart attack on August 6, 1984.

On September 25, 1984, Gladys filed a survivor's claim for benefits, which was promptly denied on October 18. Then, purporting to be acting on behalf of both claims (her own and her ex-husband's claim for living miner's benefits), Gladys requested a hearing. A hearing before an administrative law judge (ALJ) was held November 20, 1986. On July 14, 1987, the ALJ ruled that Gladys was entitled to bring the claims, but he denied them on the merits.

Gladys sought BRB review. The Director of the Office of Workers' Compensation Programs argued that Gladys did not have

standing to assert the claims; however, on the merits, the Director conceded that the ALJ's reasoning was flawed and that a remand was required. Notwithstanding this concession, the BRB affirmed the denial of the claims on the merits without addressing the Director's argument that Gladys did not have standing.

Gladys petitions for review. She no longer asserts that Verdie's death was "due to" pneumoconiosis, see 30 U.S.C. § 922(a)(2), so her survivor's claim is abandoned. However, she continues to pursue Verdie's claim for benefits from the date of onset of disability through the month before his death. The Director renews his concession that the ALJ erred in considering the merits of the claim,[1] but also again challenges Gladys' standing.

## II.

### A.

If a miner dies before receiving black lung benefits due him on a claim he has already filed, the benefits are payable to certain persons in a descending level of priority. 20 C.F.R. § 725.545(c). The first rank in the hierarchy includes a "surviving spouse" who lived with the miner at the time of his death, § 725.545(c)(1)(i)), and a "surviving spouse" or "surviving divorced spouse" who is herself eligible for survivor's benefits (see § 725.-212—if the miner's death was "due to pneumoconiosis" and the spouse or divorced spouse meets the dependency requirements of the regulations). § 725.545(c)(1)(ii). Next are "surviving children," (c)(2), and then "surviving parents," (c)(3), but, in both cases,

only if they are personally eligible for survivor's benefits. Thus, with the exception of a "surviving spouse" living with the miner at the time of his death, the defining characteristic of eligibility under (c)(1)–(c)(3) is personal entitlement to survivor's benefits.

If no one is so entitled, the regulation looks simply to the next of kin. The "surviving spouse" takes first, followed by children and parents. (c)(4)–(c)(6). The legal representative of the miner's estate is last in line. (c)(7).

### B.

■ Gladys is a "surviving divorced spouse" because she was married to the miner for more than ten years. § 725.216. Section 725.545(c)(1)(ii) gives a "surviving divorced spouse" standing to pursue a claim for underpayment to the miner if she were "entitled *for the month of death* to black lung benefits as [the miner's] surviving spouse or surviving divorced spouse." (emphasis supplied). The emphasized phrase is the regulations' "Byzantine"[2] way of saying if the divorced spouse qualified for survivor's benefits under § 725.212.[3]

Gladys focuses her efforts on showing that she was a "dependent" under § 725.217. This showing, though necessary to her claim, is insufficient. Dependency is a requirement for survivor's benefits under § 725.212; however, because Gladys concedes that Verdie's death was not "due to pneumoconiosis," she has no claim for survivor's benefits, irrespec-

---

1. Verdie's treating physician diagnosed chronic obstructive pulmonary disease, though other evidence tended to show little or no respiratory impairment. Rather than resolve the conflicting evidence, the ALJ stated:

   The claimant relies upon this physician's report to establish the existence of black lung, claiming on page 2 of her brief that "[chronic obstructive pulmonary disease] qualifies as legal pneumoconiosis under § 718.201." This contention is completely without foundation.

   As the Director acknowledges, the ALJ would have discovered his "foundation" by simply reading the cited regulation. "Pneumoconiosis" includes "respiratory and pulmonary impairments . . . arising from coal mine employment." Impairments arising from coal mine employment

"include[ ] *any chronic pulmonary disease* resulting in respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment." 20 C.F.R. § 718.201. (emphasis added).

The ALJ also held that the treating physician's opinion was too equivocal to support a finding of pneumoconiosis. The Director disavows this latter holding as well.

2. *Pauley v. BethEnergy Mines, Inc.*, —— U.S. ——, ——, 111 S.Ct. 2524, 2535, 115 L.Ed.2d 604 (1991).

3. The living miner's benefits terminate in the month *before* his death. 20 C.F.R. § 725.203.

tive of whether she was dependent on Verdie. Consequently, she does not qualify to receive underpayments under § 725.545(c)(1)(ii), again irrespective of her dependency.[4]

■ Finally, Gladys does not qualify under any other subsection. She is patently not Verdie's child or parent, and she does not claim to be his legal representative. Subsection (c)(4) does mention the "surviving spouse," and Gladys asserts that "surviving spouse" includes "surviving divorced spouse." We are not persuaded.

■ Inasmuch as "surviving spouse" and "surviving divorced spouse" are terms of art with separate definitions in the regulations,[5] the Director has interpreted the omission of "surviving divorced spouses" in (c)(4) to mean that they are not included. An agency's interpretation of a regulation it authored deserves "substantial deference 'unless it is plainly erroneous or inconsistent with the regulation.'" *Mullins Coal Co. v. Director, OWCP*, 484 U.S. 135, 159, 108 S.Ct. 427, 440, 98 L.Ed.2d 450 (1987) (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)). The Director's interpretation would likely survive even *de novo* review, and it easily satisfies the *Mullins Coal* standard.

Moreover, the distinction drawn by the Director's interpretation of (c)(1) and (c)(4) is not arbitrary. Unlike a survivor's benefit, which is the personal claim of the dependent spouse, child, or parent, the miner's claim for underpayment of benefits during his life passes by a quasi-inheritance system. The first policy is to take care of other beneficiaries under the Act; hence, if there is someone who qualifies in his or her own right to benefits, the living miner's benefits go to that person. If not, a simple hierarchy of intestate succession is prescribed (spouse, then children, then parents, then personal representative). There is every reason why a surviving divorced spouse might receive the miner's benefits in conjunction with being a beneficiary in her own right, but little reason she should take as an ordinary heir. Thus, we think it is perfectly rational that "surviving divorced spouses" are not mentioned in § 725.545(c)(4).

We must therefore dismiss the petition for lack of standing.

*DISMISSED.*

---

**4.** Below, when Gladys was pursuing her claim for survivor's benefits, the dependency issue was pertinent. The dependency test for surviving divorced spouses is stated in 20 C.F.R. § 725.217 (emphasis added):

> (a) An individual who is the miner's surviving divorced spouse ... shall be determined to have been dependent on the miner if, *for the month before the month in which the miner died:*
>
>    *    *    *    *    *    *
>
> (3) A court order required the miner to furnish substantial contributions to the individual's support....

We will assume for today's purposes that Verdie's $25 per week obligation was a "substantial" contribution to Gladys' support. Nonetheless, this modest obligation expired on June 11, 1984. Thus, Verdie owed Gladys nothing "for the month before the month" he died, which was July, 1984. Gladys argued, and the ALJ apparently agreed, that, because Verdie was almost three years in arrears on his support payments, Gladys' legal claim against Verdie operated to extend her dependency status forever.

The Director disagrees. The regulation says nothing about having an accrued cause of action against the miner in the month before he died; it requires a court order that the miner pay support *for* the month before he died. Verdie had no obligation to pay support for July, 1984. Gladys could possibly have enforced her claim *for* June *in* July, but that is not the same thing. The Director's interpretation of the regulation is entitled to substantial deference, but, because Gladys is not pursuing her survivor's claim here, we need not rule upon this issue today.

**5.** *See* 20 C.F.R. §§ 725.214 and 725.216.