Eva W. BARBER, Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR; United States Steel Mining Company, Incorporated, Respondents.

No. 93–1833.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 4, 1994.

Decided Jan. 10, 1995.

**ARGUED:** Patricia May Nece, Office of the Solicitor, U.S. Dept. of Labor, Washington, DC, Howard G. Salisbury, Jr., Kay, Casto, Chaney, Love & Wise, Charleston, WV, for respondents.

Before WIDENER and HALL, Circuit Judges, and CHAPMAN, Senior Circuit Judge.

Reversed and remanded by published opinion. Judge K.K. HALL wrote the opinion, in which Judge WIDENER and Senior Judge CHAPMAN joined.

## OPINION

K.K. HALL, Circuit Judge:

Eva Barber petitions for review of an order of the Department of Labor's Benefits Review Board (BRB) denying her claim for her deceased husband's black lung benefits. We reverse and remand with instructions to award benefits.

### I.

Lawrence Barber filed a claim for black lung benefits in 1973. The claim was denied because Barber was still working in the mines. On September 30, 1980, two months after he last worked, Barber filed a new claim. He died on June 29, 1985. His widow, petitioner Eva Barber, filed a claim for survivor's benefits on August 15, 1985, and, as the miner's "surviving spouse," she has

continued to pursue her husband's claim for benefits during his lifetime. *See generally Charles v. Director, OWCP*, 1 F.3d 251 (4th Cir.1993) (discussing standing of survivors).

An administrative law judge (ALJ) awarded benefits on the miner's claim. He credited Barber with 35 years of qualifying employment. He found the existence of pneumoconiosis established by positive x-rays and total disability by qualifying blood gas and pulmonary function studies. There was no evidence presented to rebut the presumption that Barber's pneumoconiosis arose from coal mine employment. On the survivor's claim, the ALJ found that there was no evidence that pneumoconiosis contributed to Barber's death, and so he denied benefits.[1]

Responsible operator U.S. Steel Mining appealed the award of benefits. The BRB reversed and remanded for reconsideration on the ground that the ALJ had failed to consider "contrary probative evidence" on the total disability issue. 20 C.F.R. § 718.204(c).

On remand, the ALJ again found the existence of a totally disabling respiratory impairment, but he concluded under § 718.204(b) that Mrs. Barber had not affirmatively demonstrated that pneumoconiosis contributed to that impairment, *see Robinson v. Pickands Mather & Co.*, 914 F.2d 35 (4th Cir.1990), and so he denied benefits. The BRB affirmed, and Mrs. Barber petitioned for review.

## II.

■ The ALJ and BRB improperly placed an affirmative duty on Mrs. Barber to show that pneumoconiosis contributed to her husband's totally disabling respiratory impairment. On claims filed before January 1, 1982, where a miner has fifteen years of employment and a totally disabling respiratory impairment, it is presumed that pneumoconiosis is a contributing cause of his impairment. 30 U.S.C. § 921(c)(4); 20 C.F.R. § 718.305(a), (d). The respondent may rebut this presumption by showing either (i) that the miner does not have pneumoconiosis at all or (ii) that pneumoconiosis does not contribute to the miner's disability. "However, in no case shall the presumption be considered rebutted on the basis of evidence demonstrating the existence of a totally disabling obstructive respiratory or pulmonary disease of unknown origin." § 718.305(d).

■ The failure of the ALJ and BRB to properly apply § 718.305 would in and of itself compel a remand. The Director and claimant argue that rebuttal has not been established here as a matter of law, and our remand should direct an award of benefits. We turn then to the legal sufficiency of the proof in rebuttal.

Though an autopsy showed little black pigment and "no typical coal-worker's macules" in Barber's lungs, his lungs were otherwise wrecked. He had acute pneumonia of both lobes and bronchi, thromboembolisms in both lungs with multiple infarctions,[2] emphysema, bronchitis, bronchiolitis, and squamous metaplasia.[3] In addition, Barber suffered from severe heart disease, including coronary arteriosclerosis, heart enlargement, hypertrophy of both ventricles, and scarring of the left ventricle. His cardiopulmonary condition was so poor that he spent the last four weeks of his life in a coma from cerebral hypoxia. No origin for the multiple pulmonary afflictions is established or even suggested by this record—e.g. Barber never smoked—and so they cannot constitute rebuttal of the § 718.305 presumption.

---

1. In light of the ALJ's award of benefits on the miner's claim, this denial was plainly erroneous. For claims filed before January 1, 1982, a surviving spouse receives survivor's benefits automatically if the miner was entitled to benefits at the time of death. 20 C.F.R. § 725.212(a)(3)(ii). The rule applied after January 1, 1982, is somewhat stricter: the survivor must show that pneumoconiosis hastened the miner's death in any way. *Shuff v. Cedar Coal Co.*, 967 F.2d 977 (4th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 969, 122 L.Ed.2d 124 (1993). Mrs. Barber did not seek review of the denial of her survivor's claim.

2. A thromboembolism is an area of coagulated blood that has closed a vessel or vessels. An infarction is the resultant death of tissue. *See* Dorland's Illustrated Medical Dictionary (Dorland's) 778, 1606 (25th ed.1974).

3. Metaplasia is any abnormal change in the type of adult cells in a tissue. "Squamous" means scaly or platelike. *See* Dorland's at 945, 1462.

Furthermore, there is no evidence in the record from which an ALJ could find that the employer has rebutted the presumption that Barber suffered from "pneumoconiosis." We have reminded ALJs and the BRB on several occasions[4] that "pneumoconiosis" is a *legal* term defined by the Act,[5] and they must bear in mind when considering medical evidence that physicians generally use "pneumoconiosis" as a *medical* term that comprises merely a small subset of the afflictions compensable under the Act. If there is any lingering confusion on this point, let us dispel it now. The legal definition of "pneumoconiosis" is incorporated into every instance the word is used in the statute and regulations. *See* 30 U.S.C. § 902 (definition applies "[f]or purposes of this subchapter"); 20 C.F.R. § 718.201 (definition applies "[f]or the purpose of the Act"). Neither authority nor logic supports the proposition that the legal definition can be ignored for selected purposes. *See Chastain v. Freeman United Coal Mining Co.,* 919 F.2d 485, 488 (7th Cir.1990) (rejecting argument that legal definition did not apply to rebuttal of the interim presumption under 20 C.F.R. § 727.203(b)(4)).[6]

Here, though the evidence could support a finding that Barber did not have pneumoconiosis in its clinical sense—Doctors Pardasani and Naeye flatly stated as much from their review of the autopsy slides—there was no evidence that his manifest pulmonary impairments were not related to or aggravated by dust exposure in the mines. Inasmuch as the rebuttal burden is the employer's, its failure to disprove aggravation of any of Mr. Barber's conditions by dust exposure was fatal to its case.

In sum, the autopsy report and related opinions do not identify the origin of Barber's diseases, and they do not address whether any of the conditions that contributed to his total disability was related to or aggravated by dust exposure in the mines. Consequently, the employer has not rebutted the § 718.305 presumption as a matter of law. Because only one factual conclusion is possible when the proper law is applied, the Director asks the court to direct an award of benefits on remand. We will grant this request.

## III.

■ Though the objectives of their arguments differ, both Mrs. Barber and the employer contend that the ALJ erred in finding that Mr. Barber received an "election card" in 1978.

A short background discussion is in order. In 1977, dissatisfied with the low rate of Part B[7] claims approvals, Congress retroactively loosened eligibility criteria and directed that, if the claimant so elected, a Part B claim could be reopened and its denial reviewed by either the Social Security Administration or the Department of Labor. Every miner whose claim had been denied was sent an "election card," which he was required to return within six months of receipt if he wished to have his claim considered anew. 30 U.S.C. § 945(a)(1); 20 C.F.R. §§ 410.704(d), 727.104(b). To mitigate any injustice to responsible operators flowing from this retroactive unsettling of settled claims, Congress directed that all payments for benefits awarded on reopened claims would come from the Black Lung Disability Trust Fund. 30 U.S.C. § 932(c)(2); 20 C.F.R. § 725.496.

An election card was sent to Mr. Barber on June 14, 1978, but it was never returned. The employer and Mrs. Barber contend that the miner did not have a meaningful opportunity to request review, so "good cause" to excuse his failure to elect review has been

---

4. *E.g., Robinson,* 914 F.2d at 39; *Nance v. Benefits Review Board,* 861 F.2d 68, 71 (4th Cir.1988); *Rose v. Clinchfield Coal Co.,* 614 F.2d 936, 938 (4th Cir.1980).

5. *See* 30 U.S.C. § 902(b); 20 C.F.R. § 718.201.

6. Though the universal applicability of the legal definition is, we think, clear from the face of the statute and regulations, surely it is beyond cavil that such an interpretation is reasonable. Inasmuch as the Director espouses this reasonable interpretation, we owe it deference. *Charles,* 1 F.3d at 254.

7. A Part B claim is one filed before January 1, 1974. These claims were administered by the Social Security Administration. Part C claims—those filed on or after January 1, 1974—are within the purview of the Department of Labor.

shown.[8] Mrs. Barber therefore asks that the 20 C.F.R. Part 727 interim regulations be applied to the claim, while the employer argues that liability should shift to the Trust Fund. *See Director, OWCP v. Quarto Mining Co.*, 901 F.2d 532, 537 (6th Cir.1990); *Old Ben Coal Co. v. Luker*, 826 F.2d 688, 693 (7th Cir.1987).[9]

They each rely solely on Mrs. Barber's testimony that she looked at all of the family mail and would have noticed if her husband had received the card, and he did not. A handwritten notation on Barber's 1980 claim states, "Election review card never completed and sent to SSA, therefore, requesting to file new claim." Mrs. Barber testified that this notation is not in her husband's handwriting.[10] Though the ALJ found Mrs. Barber to be a credible witness with an "impeccable" memory, he found that the card had actually been received. The Director urges affirmance of this finding.

This court reviews the ALJ's finding under a substantial evidence standard. The evidence is sparse on both sides of the issue. All we know for certain is that the card was indeed mailed, a credible witness with access to the recipient's mail does not remember receiving it, and someone wrote a note on Barber's Part C claim that suggests actual receipt. We think that the ALJ made a rational finding.

The order of the BRB is reversed, and this claim is remanded with instructions to award benefits.

*REVERSED AND REMANDED.*

---

**8.** See 20 C.F.R. § 727.104(b), which excuses a failure to make a timely request to reopen on a showing of "good cause."

**9.** It is not at all clear that we could address this issue if it were not raised by Mrs. Barber. The employer has not filed a cross-petition. Generally, an appellee may rely on any ground appearing in the record in support of the judgment below, though this principle does not apply to administrative action. *Securities and Exchange Comm'n v. Chenery Corp.*, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943); *Dayton v. Consolidation Coal Co.*, 895 F.2d 173, 175 (4th Cir.1990), *rev'd on other grounds, Pauley v. BethEnergy*

*Mines*, 501 U.S. 680, 111 S.Ct. 2524, 115 L.Ed.2d 604 (1991). Moreover, what the employer seeks here is not to defend the judgment but rather to fasten liability for a reversed judgment onto another. In any event, because Mrs. Barber has raised the point, and because we affirm the ALJ's finding, whether we could order transfer of liability to the Trust Fund is a moot question.

**10.** Mr. Barber did sign the completed form and thereby attest to its accuracy, although it is conceivable that the claim form was altered after submission.