**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SHIRLEY J. ROBERTS, Widow of
Clyde E. Roberts,
Petitioner,

v.

No. 95-1113

WEST VIRGINIA C.W.P. FUND;
DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR,
Respondents.

On Petition for Review of an Order
of the Benefits Review Board.
(94-2285-BLA)

Argued: December 7, 1995

Decided: January 12, 1996

Before HALL and HAMILTON, Circuit Judges, and
THORNBURG, United States District Judge for the Western
District of North Carolina, sitting by designation.

_____

Vacated and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** S.F. Raymond Smith, RUNDLE & RUNDLE, L.C.,
Pineville, West Virginia, for Petitioner. Konstantine Keian Weld,
Assistant Attorney General, Charleston, West Virginia, for Respon-

dents. **ON BRIEF:** Darrell V. McGraw, Jr., Attorney General, Charleston, West Virginia, for Respondent Fund.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Shirley Roberts, the widow of Clyde Roberts, petitions for review of the denial of her husband's claim for benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901 et seq. Because the finding upon which the Benefits Review Board (BRB) upheld the denial is not supported by substantial evidence, we remand the claim for reconsideration.

I.

Clyde Roberts worked for at least 18 years in the nation's coal mines, and he smoked cigarettes for 30 years. He had a heart attack in 1985, and he did not work thereafter. In January, 1990, he filed this claim for black lung benefits.

On February 16, 1990, Roberts was examined by Dr. C. P. Vasudevan. Pulmonary function studies and a resting arterial blood gas test were performed. The pulmonary function test results were qualifying under the regulatory criteria at 20 C.F.R. Part 718, App. B. Roberts' blood gas test was not qualifying, though it was not entirely normal; Dr. Vasudevan interpreted it as showing moderate hypoxemia. On the orders of Roberts' treating physician, a blood gas following exercise was not performed.

Dr. Vasudevan diagnosed chronic obstructive pulmonary disease (COPD), bronchial asthma, and arteriosclerotic heart disease. In his opinion, these diseases were caused by cigarette smoking and had

2

produced a mild to moderate respiratory impairment, which was sixty percent attributable to heart disease and forty percent to COPD.

An x-ray was also taken on February 16, 1990. Two readers interpreted it as negative for pneumoconiosis, but both noted a possible carcinoma in Roberts' left lung. Roberts did indeed have cancer, and it swiftly took its course. He died on April 6, 1991. His death certificate listed the immediate cause of death as "respiratory insufficiency" due to metastatic lung cancer. His widow was substituted as claimant on Roberts' pending claim.[1]

Though an _ore tenus_ hearing on his claim had been scheduled for July, 1991, the parties agreed to have the claim decided on the existing record. An administrative law judge (ALJ) evaluated the x-ray evidence and concluded that the presence of pneumoconiosis had not been shown.

Mrs. Roberts filed a timely request for modification of the denial under 20 C.F.R. § 725.310(a). She submitted the autopsy report of Dr. Felipe Pia, who made nine diagnoses, six of which involved Roberts' lungs (adenocarcinoma with metastases to the heart and lymph nodes, bilateral pulmonary embolisms, bronchopneumonia, bullous pulmonary emphysema, bilateral pleural fibrous adhesions, and "minimal" simple coal workers' pneumoconiosis).

The Department of Labor had the autopsy slides reviewed by Dr. Richard Naeye of Pennsylvania State University. Dr. Naeye corroborated Dr. Pia's report. He noted "mild" pneumoconiosis, "severe" centrilobular emphysema, "very severe" interstitial fibrosis, "acute" lobular pneumonia, and, apparently running out of adjectives, "striking" adenocarcinoma. Dr. Naeye, like Dr. Pia, felt that Roberts' pneumoconiosis was too mild to have caused any respiratory impairment. Dr. Naeye also opined that centrilobular emphysema cannot be attributed to occupational exposure to coal dust.

---

[1] Mrs. Roberts did not file a claim for benefits as a surviving spouse. See 20 C.F.R. § 725.201(a)(2)(ii).

3

The ALJ found that Mrs. Roberts had not shown that her dead husband had suffered from a totally disabling respiratory condition. The BRB affirmed. Mrs. Roberts petitioned for review in this court.

II.

Our review of a final administrative order in a black lung case is limited. We must affirm the order if it is in accordance with law and is supported by substantial evidence. Amigo Smokeless Coal Co. v. Director, OWCP, 642 F.2d 68 (4th Cir. 1981).

Substantive analysis of a black lung claim under the permanent regulations is relatively straightforward. See 20 C.F.R. §§ 718.201-204. First, does the miner have "pneumoconiosis" arising from coal mine employment? If not, he loses. If yes, does the miner have a totally disabling respiratory impairment? If not, he loses. If yes, is the miner's pneumoconiosis a "contributing cause" of his respiratory disability? If not, he loses; if yes, he wins. So long as pneumoconiosis is a "contributing" cause, it need not be a "significant" or "substantial" cause.

> We . . . find that the words "significant" or "substantial," while contributing little to the analysis of the causation requirement, could be used to reconstruct an unnecessarily high hurdle for claimants to clear. . . .
>
> If the claimant would have been disabled to the same degree and by the same time in life if he had never been a miner, then benefits should not be awarded. On the other hand, if his mining has contributed to his disability, then benefits are appropriate.

Robinson v. Pickands Mather & Co., 914 F.2d 35, 38 (4th Cir. 1990).

The claimant's entitlement to benefits is measured by his physical condition at the time of the hearing. Cooley v. Island Creek Coal Co., 845 F.2d 622, 624 (6th Cir. 1988); Coffey v. Director, OWCP, 5 BLR 1-404 (1982). Where the claimant has died before the hearing, the issue is whether he was disabled no later than the month preceding his death. See 20 C.F.R. § 725.203(b)(1).

4

The parties do not now dispute that Roberts cleared step one of the permanent regulations' test: he did suffer from pneumoconiosis. Steps two and three are in dispute.

III.

The ALJ found that Roberts did not have a totally disabling respiratory condition. Rarely does a finding of fact fail the substantial evidence test unless it was induced by an analytical error or misapplication of the governing law. Such a misapplication occurred here. The ALJ ignored the Robinson standard and instead conflated the "total disability" and "contributing cause" inquiries into one.[2] The ALJ's analysis consists solely of attributing whatever impairment Roberts had to various non-pneumoconiosis causes, most notably heart disease and cigarette smoking. At this step of the Robinson inquiry, respiratory impairment -- and not its etiology -- is the only issue.[3]

There is no conceivable way to find that this miner did not have a totally disabling respiratory condition. In fact, he had a totally terminal respiratory condition.[4] Pneumoconiosis may not have played

_____

[2] Neither the ALJ nor the BRB cited Robinson, and the BRB stated the general standard of entitlement in a manner that contradicts it: "[C]laimant must establish that the miner suffered from pneumoconiosis; that the pneumoconiosis arose out [of] coal mine employment; and that the pneumoconiosis was totally disabling." (emphasis added). The central point of Robinson was to reject the notion that "pneumoconiosis" itself must be severe enough to render the miner disabled.

[3] In this regard, Robinson is quite similar to rebuttal analysis under the interim regulations. See Sykes v. Director, OWCP, 812 F.2d 890, 893-894 (4th Cir. 1987) (20 C.F.R. § 727.203(b)(2) addresses whole-man disability vel non; questions of causation are relevant only to § 727.203(b)(3), under which the respondent must "rule out" any connection between pneumoconiosis and disability).

[4] As we stated above, to prevail on the total respiratory disability issue, Mrs. Roberts must show that her husband was disabled no later than the month preceding the month of death. Inasmuch as Mr. Roberts died on April 6, she need only show that his respiratory condition precluded him from working in the mines a scant week earlier. Counsel for the Fund conceded at argument that there is no doubt that Roberts was so precluded.

5

any or much of a role in it, but that is the next (and an entirely separate) question. The ALJ's finding, on which the BRB solely relied, is not supported by substantial evidence.

IV.

After his faulty disability analysis, the ALJ stated, "I find that the simple pneumoconiosis was not a factor nor did it contribute to [Roberts'] respiratory impairment." This finding, if in accordance with law and supported by substantial evidence, might justify a denial of benefits under Robinson. However, the BRB decided this case only on the total disability issue, and it expressly refused to rule on "claimant's other contentions."

Under the Chenery5 doctrine, courts may not affirm administrative action on grounds not relied upon by the agency. This court has applied Chenery to black lung claims. Dayton v. Consolidation Coal Co., 895 F.2d 173, 175 (4th Cir. 1990), rev'd on other grounds, Pauley v. BethEnergy Mines, 501 U.S. 680 (1991); Grigg v. Director, Office of Workers' Compensation Programs, 28 F.3d 416, 418 (4th Cir. 1994). The claim must therefore be remanded for consideration of the causation issue.

V.

We make two observations to guide the proceedings on remand. The respondent Fund asserted at oral argument that it possesses additional evidence, which was not considered by the ALJ, on the causation issue. While we leave to the BRB the ultimate question of whether to remand the claim anew to an ALJ, we suggest that administrative decisions based on the most complete record possible generally, and deservedly, stand the best chance of surviving our review. If the evidentiary record be reopened, Mrs. Roberts should also have the opportunity to offer additional proof.

_____

5 **Securities and Exchange Comm'n v. Chenery Corp.**, 318 U.S. 80 (1943).

6

Finally, the record reveals that Roberts suffered from a host of distinct pulmonary diseases. We remind the BRB that the Act provides benefits for any chronic lung disease "significantly related to, or substantially aggravated by, dust exposure in coal mine employment." 20 C.F.R. § 718.201; see Barber v. Director, OWCP, 43 F.3d 899, 901 (4th Cir. 1995). Moreover, contrary to strict clinical usage, the Act defines any such pulmonary disease as "pneumoconiosis." In evaluating the opinions of physicians, ALJs and the BRB must bear in mind that medical professionals generally use medical terms of art, not legal ones. To physicians, "pneumoconiosis" is a single disease, arising in whole from a specific cause (dust exposure), and producing a characteristic form of pulmonary damage. To the law,"pneumoconiosis" is an array of diseases, arising in whole or in part from dust exposure, and the form of pulmonary damage is irrelevant, so long as some impairment arises from it.

The denial of benefits is vacated, and the claim is remanded for reconsideration in accordance with this opinion.

VACATED AND REMANDED

7