**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ARLETTE RICHARDSON, widow of
Stuart Richardson,
Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR,
Respondent.

No. 95-1859

On Petition for Review of an Order
of the Benefits Review Board.
(93-2497-BLA)

Argued: June 5, 1996

Decided: September 3, 1996

Before WILLIAMS and MOTZ, Circuit Judges, and CURRIE,
United States District Judge for the District of South Carolina,
sitting by designation.

_____

Reversed and remanded by published opinion. Judge Williams wrote
the opinion, in which Judge Motz and Judge Currie joined.

_____

**COUNSEL**

**ARGUED:** Maureen Hogan Krueger, Jenkintown, Pennsylvania, for
Petitioner. Christian P. Barber, Counsel for Appellate Litigation,
UNITED STATES DEPARTMENT OF LABOR, Washington, D.C.,

for Respondent. **ON BRIEF:** Thomas S. Williamson, Jr., Solicitor of Labor, Donald S. Shire, Associate Solicitor, Rodger Pitcairn, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent.

_____

**OPINION**

WILLIAMS, Circuit Judge:

Arlette Richardson (Richardson) appeals an Administrative Law Judge's (ALJ) order denying benefits on her survivor's claim under the Black Lung Benefits Act (the Act), 30 U.S.C.A.§ 901-945 (West 1986 & Supp. 1996). The Benefits Review Board (BRB) affirmed the denial of benefits, holding that the ALJ had acted within his discretion in rejecting the report of a physician who opined that pneumoconiosis substantially contributed to the death of her husband, a former coal miner. Because we find that the ALJ failed to recognize that legal pneumoconiosis in the form of chronic obstructive lung disease (COPD) arising from coal mine employment had been established and omitted from consideration potentially dispositive evidence supporting Richardson's claim, we reverse and remand to the ALJ for further proceedings.

I.

Before Richardson filed her survivor's claim, Stuart Richardson, her husband and a coal miner for over twelve years, was awarded benefits on his lifetime claim approximately one year after his death in October 1986. In the order awarding benefits, the deputy commissioner found that Mr. Richardson had been totally disabled due to legal pneumoconiosis.**1** The Director did not contest the deputy commissioner's award of benefits. See 20 C.F.R.§ 725.419 (1995).

_____

**1** Correspondence from the Office of Workers' Compensation Programs submitted in the proceedings before the ALJ reveals that legal pneumoconiosis "was proven pursuant to Regulation Section 718.202(a)(i)A by the presence of a chronic pulmonary or respiratory impairment diagnosed in the medical evidence as COPD, COLD, chronic bronchitis and emphysema." (J.A. at 116.)

2

Shortly thereafter, proceeding pro se, Richardson filed a survivor's claim, contending that she was entitled to benefits because her husband's "death was due to pneumoconiosis." 20 C.F.R. § 718.205(a) (1995). To support her claim before the ALJ, Richardson submitted the report of Dr. Vito Caselnova, a physician who treated Mr. Richardson in two of the four hospitalizations in the final year of his life. In a brief, handwritten report, Dr. Caselnova opined:

> It was a well documented fact that the deceased, Mr. Stuart Richardson suffered from pneumoconiosis as a result of working many years in the underground coal mines.

> The pre-existing pneumoconiosis (Black Lung) contributed substantially by leaving his lungs in a severely compromised state prior to the onset of pulmonary cancer. In summary, it is a well documented fact that the pneumoconiosis is a contributing factor markedly hastening the miner's demise.

(J.A. at 24-25.) Accompanying Dr. Caselnova's report were hospital records, including a discharge report prepared by Dr. Caselnova dated July 25, 1986, that noted the presence of COPD.

Additionally, Richardson submitted a discharge report, dated October 5, 1986, and death certificate signed by Dr. H. Rizvi, the physician who treated Mr. Richardson during his final two hospitalizations. In the discharge report, Dr. Rizvi noted the presence of COPD, and on the death certificate, he listed metastatic lung cancer and COPD as the causes of Mr. Richardson's death.

Responding to Richardson's contentions, the Director offered into evidence the report of Dr. Leon Cander, a consultant for the Department of Labor. After reviewing the medical records, Dr. Cander concluded that Mr. Richardson's death was attributable solely to lung cancer:

> Although disabling pneumoconiosis, as defined by the Act, has been adjudicated to be present, there is no evidence that Mr. Richardson's chronic obstructive lung disease was a

3

> contributing cause or factor leading to Mr. Richardson's
> death. There is no evidence that a complication of pneumo-
> coniosis was present which caused Mr. Richardson's death.

(J.A. at 23.)

The ALJ denied benefits on Richardson's survivor claim, conclud-
ing that Dr. Caselnova's report was not reasoned or documented. The
ALJ concluded that Dr. Caselnova's report was unreasoned because
Dr. Caselnova never linked Mr. Richardson's COPD with his coal
mine employment to establish the existence of legal pneumoconiosis.[2]
See 20 C.F.R. § 718.201 (1995) (defining legal pneumoconiosis in
part as "any chronic pulmonary disease resulting in respiratory or pul-
monary impairment significantly related to, or substantially aggra-
vated by, dust exposure in coal mine employment"). Additionally, the

_____

[2] Much confusion in this case stems from the failure of counsel and
witnesses to specify, when they use the term "pneumoconiosis," whether
they are referring to legal or clinical pneumoconiosis, and from the fail-
ure of the ALJ to resolve the conflict when this ambiguity arises in the
record. To make an accurate assessment of whether the ALJ's decision
is supported by substantial evidence, see Jewell Smokeless Coal Corp. v.
Street, 42 F.3d 241, 243 (4th Cir. 1994), the litigants and the ALJ alike
must cooperate to provide a record free from this ambiguity. As we have
observed, clinical pneumoconiosis is only a small subset of the compen-
sable afflictions that fall within the definition of legal pneumoconiosis
under the Act. See Barber v. Director, OWCP, 43 F.3d 899, 901 (4th Cir.
1995). COPD, if it arises out of coal-mine employment, clearly is encom-
passed within the legal definition of pneumoconiosis, even though it is
a disease apart from clinical pneumoconiosis. See Warth v. Southern
Ohio Coal Co., 60 F.3d 173, 175 (4th Cir. 1995).

Without a clear record, review is difficult. For example, to determine
properly whether a physician's opinion is supported by medical records,
the distinction between legal and clinical pneumoconiosis must be made.
In the instant case, Dr. Caselnova opined in his report that the miner suf-
fered from "pneumoconiosis." After reviewing the medical records, how-
ever, we find no specific reference to "pneumoconiosis," although we do
find several to COPD. Therefore, because we do not know whether Dr.
Caselnova was referring to medical or legal pneumoconiosis in his
report, we cannot determine with assurance whether it is supported by
the medical records.

4

ALJ concluded that even if the existence of legal pneumoconiosis were assumed, Dr. Caselnova's report could not establish that "pneumoconiosis was a substantially contributing cause or factor leading to the miner's death or [that] the death was caused by complications of pneumoconiosis" because of the absence of documentation supporting the report. 20 C.F.R. § 718.205(c)(2). The ALJ made no mention of the death certificate signed by Dr. Rizvi that listed COPD as a cause of death. After an appeal by Richardson, the Benefits Review Board affirmed on the reasoning of the ALJ.

II.

In order to receive benefits under the Act, a miner's survivor must prove that the miner suffered from legal pneumoconiosis and that the pneumoconiosis "`serve[d] to hasten [the miner's] death in any way.'" See Shuff v. Cedar Coal Co., 967 F.2d 977, 979-80 (4th Cir. 1992) (quoting the Director's brief), cert. denied, 506 U.S. 1050 (1993). Richardson asserts that (1) her husband's legal pneumoconiosis has been proved through the stipulation and concession of the Director, and (2) the ALJ improperly rejected Dr. Caselnova's report and failed to consider other evidence supporting a finding that legal pneumoconiosis hastened Mr. Richardson's death. We review "the findings of the ALJ, as affirmed by the BRB, to determine [if they] are supported by substantial evidence and in accordance with the law." Jewell Smokeless Coal Corp. v. Street, 42 F.3d 241, 243 (4th Cir. 1994). We address each of Richardson's contentions in turn.

A.

Contrary to the opinion of the ALJ, Richardson contends that the existence of legal pneumoconiosis in the form of COPD arising out of coal mine employment has been legally established. We agree. Before the ALJ, the Director clearly stipulated to the findings of fact in the deputy commissioner's award of lifetime benefits. (See J.A. at 83 ("[I]f I'm being asked to stipulate to the contents of [the award of benefits] I have no problem with that.").) Therefore, the Director agreed that "as a result of the conditions of coal mine employment [Mr. Richardson] ha[d] contracted a severe chronic respiratory disease diagnosed as coal workers' pneumoconiosis, as that term is defined in the Act and Regulations." (J.A. at 20;) see Fisher v. First

5

Stamford Bank & Trust Co., 751 F.2d 519, 523 (2d Cir. 1984) ("[A] stipulation of fact that is fairly entered into is controlling on the parties and the court is bound to enforce it.") Moreover, in his brief, "the Director concede[d] that the deputy commissioner awarded benefits because [Mr. Richardson] suffered from totally disabling COPD arising out of coal mine employment." (Appellee's Br. at 15.) The Director's stipulation and concession are binding on the parties and this court in this appeal.[3] See Hagan v. McNallen (In re McNallen), 62 F.3d 619, 625 (4th Cir. 1995) (holding that concession before bankruptcy court was binding on appeal); American Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1988) (stating that stipulations and admissions are binding on the parties and the court on appeal as well as at trial). Combined, the stipulation and concession establish that at the time of his death Mr. Richardson suffered from legal pneumoconiosis in the form of COPD arising from coal mine employment.[4] See Plesh v. Director, OWCP, 71 F.3d 103, 108 (3d

_____

[3] Misguidedly, the Director argues that the findings of fact and conclusions of law in the deputy commissioner's award of benefits in the miner's lifetime claim have no collateral estoppel effect in Richardson's survivor claim. The Director argues that because he did not contest the miner's entitlement to benefits in the lifetime claim, the issue of whether the miner's COPD was caused by coal-mine employment was never "actually litigated." See Swentek v. USAIR, Inc. , 830 F.2d 552, 561 (4th Cir. 1987) (quoting Otherson v. Department of Justice , 711 F.2d 267, 273 (D.C. Cir. 1983)). Because we find that the Director stipulated to the contents of the award of benefits in the miner's claim during the proceedings before the ALJ in the survivor's claim, we need not decide whether the Director is collaterally estopped from litigating the issue of causation in the survivor's claim. But see Alexander v. Island Creek Coal Co., 12 BLR 1-44 (1988) (holding that survivor was not collaterally estopped from relitigating whether miner was disabled by a chronic respiratory or pulmonary disease because of the different standards of proof applicable to miner's and survivor's claims); but cf. Lisa Lee Mines v. Director, OWCP, 86 F.3d 1358, 1363 (4th Cir. 1996) (en banc) (stating that in a successive claim under the Act, "[e]ach of the alternative holdings [on the miner's prior claim] is presumed to have been correct when made").

[4] As this is a case in which there is no responsible operator, we need not decide whether the Director's stipulation and concession would be binding on an employer who was not a party to either the stipulation or concession.

6

Cir. 1995) (noting that coal-dust inhalation causes permanent damage and that pneumoconiosis is a progressive and incurable disease). Thus, the first element satisfied, we turn now to the issue of whether substantial evidence supports the ALJ's conclusion that Mr. Richardson's legal pneumoconiosis did not hasten his death under Shuff.

B.

Richardson contends that the ALJ erred in ruling that she had not proved legal pneumoconiosis hastened her husband's death under Shuff. Richardson supports her assertion by arguing that the ALJ failed to consider the discharge report and death certificate prepared by Dr. Rizvi and improperly rejected the report of Dr. Caselnova. While conceding that the ALJ did not consider the reports of Dr. Rizvi, the Director responds that the ALJ's failure to weigh those reports is harmless error and that the ALJ properly rejected Dr. Caselnova's report as unreasoned and undocumented. We address these contentions seriatim.

1.

We cannot find that the failure of the ALJ to consider the discharge report and death certificate of Dr. Rizvi in making his causation determination is harmless error. The Director argues that because the hospital records did not establish that Mr. Richardson's COPD arose from coal mine employment, the listing of COPD as a cause of death on the death certificate was insignificant. Without a connection between her husband's COPD and his coal mine employment, the Director asserts, Richardson is not entitled to benefits under the Act because she cannot prove that legal pneumoconiosis existed, much less that it was a substantially contributing cause or factor in her husband's death. See 20 C.F.R. §§ 718.201, 718.205(c)(2).

The Director's argument completely ignores the established fact that Mr. Richardson suffered from legal pneumoconiosis in the form of COPD arising from coal mine employment. Although not manifest from the medical records, in his stipulation and concession, the Director himself provides the necessary link between Mr. Richardson's COPD and his coal mine employment to establish the existence of legal pneumoconiosis. If credited, the death certificate therefore rep-

resents relevant evidence that the ALJ failed to consider before concluding that legal pneumoconiosis did not hasten Mr. Richardson's death under Shuff. Thus, remand is appropriate for the ALJ to revisit the issue of whether Mr. Richardson's legal pneumoconiosis hastened his death in light of the death certificate prepared by Dr. Rizvi listing COPD as a cause of death.[5] See Grigg v. Director, OWCP, 28 F.3d 416, 420 (4th Cir. 1994) (agreeing with the Director that remand was appropriate on ALJ's failure to weigh physician's opinion).

2.

Because of the Director's stipulation and concession, the ALJ also must reevaluate the report of Dr. Caselnova. The ALJ concluded first that the report of Dr. Caselnova was not well-reasoned because Dr. Caselnova never "link[ed] the diagnosis of COPD to a specific cause" (J.A. at 11), and second, that there was no evidence in the hospital records supporting Dr. Caselnova's conclusion that pneumoconiosis was a substantially contributing cause of Mr. Richardson's death. The Director has conceded, however, that Mr. Richardson's COPD arose from coal mine employment, the necessary logical connection to establish the existence of legal pneumoconiosis missing from the medical records. Thus, in addition to consideration of the death certificate prepared by Dr. Rizvi, we must remand for reconsideration of Dr. Caselnova's report to determine whether the hospital records support his finding that pneumoconiosis hastened Mr. Richardson's death. See King v. Califano, 615 F.2d 1018, 1020 (4th Cir. 1980) (remanding case for proper consideration of the evidence because "[e]ven if legitimate reasons exist for rejecting or discounting certain evidence, the Secretary cannot do so for no reason or for the wrong reason").

We are unable to conclude whether the ALJ's finding that Dr. Caselnova's report is not adequately documented is supported by substantial evidence. In reevaluating the report of Dr. Caselnova, the ALJ must resolve whether Dr. Caselnova's use of "COPD" in the hospital records corresponded with his use of "pneumoconiosis" in his report prepared in connection with Richardson's claim. In opining that Mr.

_____

[5] Indeed, we find it puzzling that Dr. Cander, after reviewing the medical evidence, including the death certificate, found no evidence that COPD was a contributing cause or factor leading to the miner's death when the death certificate listed COPD as a cause of death.

8

Richardson suffered from pneumoconiosis and that pneumoconiosis hastened his death, Dr. Caselnova failed to specify whether he was referring to clinical pneumoconiosis or legal pneumoconiosis when he stated that Mr. Richardson's "pre-existing pneumoconiosis (Black Lung) contributed substantially" to his death. **6** (J.A. at 24-25.) Thus, once he resolves this issue, the ALJ will be in a better position to evaluate whether Dr. Caselnova's report is adequately supported by the hospital records that were originally attached to the report and to explain on remand his reasons for crediting or discrediting Dr. Caselnova's report.

III.

In summary, we conclude that the ALJ's decision is not supported by substantial evidence because the Director has through his stipulation and concession established that at the time of his death Mr. Richardson suffered from legal pneumoconiosis in the form of COPD arising from coal mine employment; consequently, the ALJ erred in omitting from consideration the death certificate prepared by Dr. Rizvi and discrediting Dr. Caselnova's report for its failure to connect the COPD to coal mine employment. Furthermore, because of the lack of clarity in the record, we are unable to review the ALJ's conclusion that Dr. Caselnova's report is inadequately documented. Because of the unclear record and the conflicting evidence on the issue of whether legal pneumoconiosis hastened Mr. Richardson's death, we remand so that the ALJ may revisit his causation determination, taking into account the reports of Dr. Rizvi and reviewing Dr. Caselnova's report in light of the Director's concession of the existence of legal pneumoconiosis in the form of COPD arising from coal mine employment.

REVERSED AND REMANDED

_____

**6** If Dr. Caselnova's report refers to the particular medical affliction known in medical circles as "coal workers' pneumoconiosis," see Hobbs v. Clinchfield Coal Co., 45 F.3d 819, 821 (4th Cir. 1995), the record before us does not support his conclusion that pneumoconiosis hastened Mr. Richardson's death. The hospital records do not contain any evidence of a diagnosis of medical pneumoconiosis, nor does the Director concede that Mr. Richardson suffered from medical pneumoconiosis. See discussion supra note 2.

9