**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JOHN J. RING TRUCKING COMPANY;
OLD REPUBLIC INSURANCE COMPANY,
Petitioners,

v.

No. 97-1018

CLAUDE E. MEADE; DIRECTOR, OFFICE
OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,
Respondents.

On Petition for Review of an Order
of the Benefits Review Board.
(87-3252-BLA, 93-332-BLA)

Argued: March 6, 1998

Decided: April 13, 1998

Before NIEMEYER, HAMILTON, and LUTTIG, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Mark Elliott Solomons, ARTER & HADDEN, Washing-
ton, D.C., for Petitioners. Joseph E. Wolfe, WOLFE & FARMER,
Norton, Virginia, for Respondents. **ON BRIEF:** Laura Metcoff
Klaus, ARTER & HADDEN, Washington, D.C., for Petitioners.
Bobby Steven Belcher, Jr., WOLFE & FARMER, Norton, Virginia,
for Respondent Meade.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

From an award of black lung benefits to Claude Meade under 30 U.S.C. § 901 et seq., Meade's employer appealed to the Benefits Review Board, arguing principally that the Administrative Law Judge ("ALJ") improperly applied the presumption afforded Meade under 20 C.F.R. § 727.203(a) in light of the Supreme Court's decision in Mullins Coal Co. v. Director, OWCP, 484 U.S. 135 (1987). While the Board agreed with the employer that the ALJ had improperly applied § 727.203(a), it affirmed the award of benefits on the basis that substantial evidence in the record nevertheless justified the award. We affirm.

I

In April 1979, Meade filed an application with the Department of Labor for black lung disability benefits under the Black Lung Benefits Act. Over eight years later, his claim was heard by an ALJ, who found, as a matter of uncontested fact, that Meade had 18 3/4 qualifying years of coal mine employment and had last been employed in late 1978 as a coal truck driver. The ALJ also found that Meade had been a heavy smoker for approximately 30 to 40 years. Analyzing the case under the framework set out in 20 C.F.R. § 727.203, the ALJ concluded that the interim presumption that the claimant miner is disabled due to pneumoconiosis was properly invoked under §§ 727.203(a)(1), (2) and (4).

First, the ALJ noted that the record contained a total of 37 interpretations of 9 x-rays and that all x-rays from 1966 to December 1986 were either unreadable or negative with respect to pneumoconiosis. However, four films dated between December 1986 and June 1987 displayed mixed results. The readers whom the ALJ found most qualified were doctors who were both board-certified radiologists and "B-

2

readers," doctors who had passed a certifying examination. Of these experts, Dr. DePonte read both the December 1986 film and the February 26, 1987 films as positive for the presence of pneumoconiosis, while Dr. McCluney read the June 1987 film as negative. Doctors considered less qualified because they were not board certified also split on their conclusions. Three of these B-readers found the December 1986 film to be negative, three others found the February 12, 1987 film to be positive, one B-reader disagreed with Dr. DePonte and found the February 26, 1987 film to be negative, and one B-reader agreed with Dr. McCluney and found the June 1987 film to be negative. The ALJ considered this x-ray evidence under the standard of Stapleton v. Westmoreland Coal Co., 785 F.2d 424, 426 (4th Cir. 1986) (en banc) (holding that the interim presumption under § 727.203 could be invoked where there was credible evidence that a single x-ray indicated the presence of pneumoconiosis or a single qualifying pulmonary function study indicated the presence of chronic respiratory or pulmonary disease), and concluded that there was sufficient evidence to invoke the interim presumption. The decision in Stapleton, however, was later reversed and a more stringent standard adopted by the Supreme Court in Mullins Coal Co. v. Director, OWCP, 484 U.S. 135 (1987), where the Court held that in order to permit invocation of the interim presumption, the ALJ must weigh all like-kind evidence and determine that a preponderance of the like-kind evidence warrants invocation. See id. at 147, 159-60.

The ALJ also found that Meade had invoked the presumption pursuant to §§ 727.203(a)(2) and 727.203(a)(4). These provisions allow for the invocation of the presumption if ventilatory studies "establish the presence of a chronic respiratory or pulmonary disease" according to the table in § 727.203(a)(2) or if the ALJ determines under § 727.203(a)(4) that "Other medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establishes the presence of a totally disabling respiratory or pulmonary impairment." With respect to subsection (a)(2), four pulmonary studies were present in the record, from 1980, 1981, February 1987, and June 1987. Both the FEV1 and MVV values in all four studies were below the benchmarks set forth in the regulations, thus satisfying the standard for invocation of the interim presumption under subsection (a)(2). However, the ALJ found the MVV value of the 1980 test not reliable and noted a dispute between two doctors as to the

3

proper MVV value for the 1981 test, although both figures were below the benchmark and satisfied findings of regulatory disability.

With respect to Meade's invocation of the presumption under subsection (a)(4), six doctors submitted evidence of their examinations of Meade. As with their interpretations of the x-ray evidence, the doctors' interpretations of their physical examinations produced conflicting results. Some doctors diagnosed Meade with pneumoconiosis, while others believed that there was no evidence of pneumoconiosis and that whatever pulmonary dysfunction he had was attributable to his many years of heavy smoking.

After concluding that the interim presumption had been properly invoked, the ALJ found no evidence of rebuttal under any of the four applicable subsections of 20 C.F.R. § 727.203(b). With respect to subsection (b)(1), which allows rebuttal if the claimant has been performing his usual mining work, there was no rebuttal since Meade had not worked at all since 1978. Under subsection (b)(2), which allows rebuttal if the claimant is capable of working, the ALJ found no rebuttal since there was "reliable evidence of the Claimant's total disability" from the pulmonary function studies in 1987, and since the ALJ concluded that no doctor had expressed an opinion to counter the consensus of the examining physicians that Meade was totally disabled.

The most contested issue on rebuttal was presented under subsection (b)(3), which provides that the interim presumption may be rebutted if the "evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment" or, in other words, if the evidence in this case establishes that Meade's disability resulted entirely from his smoking. Because the ALJ found that the opinions of the doctors who believed that smoking had caused Meade's respiratory ailments overlooked earlier evidence, and because each of the doctors was found either to have missed critical opportunities to evaluate Meade or to have been equivocal in their conclusions, he found "that the opinions of these three doctors are not sufficiently probative to `rule out' a causational relationship between the Claimant's total disability and his coal mine employment . . . . I therefore find that rebuttal cannot take place under Section 727.203(b)(3)."

4

Finally, the ALJ found no rebuttal under subsection (b)(4), which allows rebuttal if it can be shown that the claimant does not have pneumoconiosis. In assessing this element, the ALJ gave "the greatest weight" to the four most recent x-rays from 1986-87, since pneumoconiosis is a "progressive disease."* Weighing the qualifications of the doctors, the ALJ concluded that "the x-ray evidence, as interpreted by the most highly qualified radiological diagnosticians, establishes the presence of pneumoconiosis." He also noted that "[e]ven if I were to find that a simple B-reader was as well qualified as a Board-certified radiologist who is also a B-reader, the x-ray evidence for and against the existence of pneumoconiosis would be equivocal." Weighing the evaluations of the examining physicians, the ALJ stated, "I do not find the conclusions of Drs. Garzon, Bercher, and Hippensteel concerning the non-existence of pneumoconiosis to be reliable." Thus, since he found that "it has not been demonstrated that the Claimant did not have pneumoconiosis," rebuttal was unavailable under subsection (b)(4).

The ALJ concluded therefore that the presumption invoked under § 727.203(a) had not been rebutted under § 727.203(b) and that Meade was "entitled to benefits under the Act commencing as of the first day of [the] month in which he filed his claim, April 1, 1979."

Shortly after the employer appealed the ALJ's decision to the Board, the Supreme Court handed down its decision in Mullins, which held that to find invocation of the interim presumption under 20 C.F.R. § 727.203(a), the ALJ must weigh all like-kind evidence and determine that it is sufficient to establish invocation under the individ-

_____

*The employer has argued that this premise is in error, citing to a report of the Surgeon General for the proposition that pneumoconiosis is not progressive. We do not resolve this dispute because we note that the "pneumoconiosis" covered by the Black Lung Benefits Act is a legal term of art rather than a clinical definition, see Barber v. Director, Office of Workers' Compensation Programs, 43 F.3d 899, 901 (4th Cir. 1995), and because the Supreme Court has taken notice of the fact that the legal definition of pneumoconiosis is as a progressive disease. See Mullins Coal Co. v. Director, OWCP, 484 U.S. 135, 151 (1987) ("`pneumoconiosis is a progressive and irreversible disease'" (quoting Elkins v. Beth-Elkhorn Corp., 2 BLR 1-683, 1-686 (Ben. Rev. Bd. 1979))).

5

ual subsections by the preponderance of the evidence. See 484 U.S. at 146-61. The Board recognized accordingly that the ALJ had used the wrong legal standard in evaluating whether the presumption had been invoked, but it held that the error was harmless, since the ALJ, in weighing the x-ray evidence under subsection (b)(4) to determine whether the presumption had been rebutted, had "properly found that because pneumoconiosis is a progressive disease, the interpretations of the four most recent x-rays are entitled to the greatest weight." The Board also held that the ALJ had properly relied on the two positive findings of pneumoconiosis by the board-certified B-readers versus the one negative finding by a similarly qualified doctor "to the exclusion of readings by physicians with lesser credentials to find the existence of pneumoconiosis established." The Board concluded that "we affirm the [ALJ's] finding that the x-ray evidence establishes the existence of pneumoconiosis at subsection (b)(4) and apply this finding to subsection (a)(1)."

The employer noticed this appeal, alleging that (1) the ALJ's application of the wrong legal standard was not harmless error; (2) the ALJ's rebuttal findings were flawed; and (3) the ALJ improperly awarded benefits beginning at a date before the evidence established the existence of pneumoconiosis.

II

The employer first contends that the ALJ's application of the incorrect standard of Stapleton v. Westmoreland Coal Co., 785 F.2d 424, 426 (4th Cir. 1986) (en banc), to his analysis of the x-ray evidence was not harmless. We disagree. While we agree that the ALJ analyzed the facts under the incorrect legal standard, we affirm because his conclusions were nonetheless supported by substantial evidence.

The Board noted that the ALJ's weighing of x-ray evidence in addressing the employer's effort to rebut the interim presumption could be applied also to establish the presumption. While that may be true in some instances, it cannot be true as a general proposition. The Board must be cognizant that the burden in invoking presumptions must be carried by the claimant and the burden on rebuttal must be carried by the employer. Therefore, it does not follow that because the

6

employer failed in its rebuttal, that finding can automatically establish that the employee carried his burden on invocation.

In this case, however, the ALJ's findings did not depend on whether the burden was met. Rather, the ALJ concluded as a fact that "the x-ray evidence, as interpreted by the most highly qualified radiological diagnosticians, establishes the existence of pneumoconiosis." Moreover, he also found that the conclusions of the doctors who failed to find pneumoconiosis from the x-rays were not reliable.

In addition to those factual findings about the weight of the x-ray evidence, the ALJ noted that the interim presumption could also be invoked pursuant to §§ 727.203(a)(2) and (a)(4). Indeed, all of the pulmonary function studies presented by the parties provide sufficiently low MVV and FEV1 values to permit invocation under § 727.203(a)(2). While the employer conceded this conclusion at oral argument, it maintained that invocation under § 727.203(a)(2) is improper because the ALJ did not properly explain his holding. Although the employer is correct that the Administrative Procedure Act imposes upon an ALJ a duty to explain his holdings in order to enable effective appellate review, see See v. Washington Metro Area Transit Auth., 36 F.3d 375, 384 (4th Cir. 1994), we believe that in light of the facts and circumstances of this case, an adequate explanation was presented. Although the ALJ did not actually discuss the pulmonary function studies in his footnote, the opinion itself contains a summary of the studies, with credibility findings and conclusions appended to the discussion. In addition, all of the studies before the ALJ satisfy the objective criteria for invocation of the interim presumption pursuant to § 727.203(a)(2). Rather than requiring the ALJ to state the obvious in these circumstances, we find it sufficient that the opinion contains "`adequate information to accommodate a thorough review,'" Washington Metro, 36 F.3d at 384 (quoting Director, OWCP v. Congleton, 743 F.2d 428, 429 (6th Cir. 1984)). Accordingly, we affirm the Board's conclusion that the record supports invocation of the interim presumption under § 727.203(a).

III

The employer next contends that the ALJ erred in failing to find that the evidence established proper rebuttal of the interim presump-

tion under 20 C.F.R. § 727.203(b). In particular, it maintains that the ALJ erred in failing to find rebuttal evidence under §§ 727.203(b)(3) and (b)(4), which provide for rebuttal of the presumption if all relevant medical evidence "establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment; or . . . establishes that the miner does not, or did not, have pneumoconiosis."

The ALJ concluded with respect to the employer's proffered (b)(3) rebuttal evidence that the employer had failed to establish that there was no significant relationship between Meade's total disability and his occupational dust exposure. Specifically, the ALJ relied upon the fact that the employer's doctors overlooked the pulmonary function study evidence and the more recent x-ray evidence, which tended to establish that Meade had pneumoconiosis, to conclude that the employer had failed "to `rule out' a causational relationship between the claimant's total disability and his coal mine employment." Bethlehem Mines Corp. v. Massey, 736 F.2d 120, 123 (4th Cir. 1984). In light of the fact that on this issue "the employer carries the burdens of production and persuasion," Curry v. Beatrice Pocahontas Coal Co., 67 F.3d 517, 520 (4th Cir. 1995), we cannot say that the ALJ's conclusion that the employer had failed to meet its rebuttal burdens was not supported by substantial evidence. See 33 U.S.C. § 921(b)(3); see also Underwood v. Elkay Mining, Inc., 105 F.3d 946, 949-50 (4th Cir. 1997).

A similar analysis follows for the ALJ's finding of no (b)(4) rebuttal, which revolves around his conclusion that the employer did not meet its burden of proving that Meade did not have pneumoconiosis. The ALJ concluded that the x-ray interpretations by the most qualified doctors, i.e., those who were both board-certified radiologists and B-readers, established the existence of pneumoconiosis. He also concluded that based "on the x-ray evidence and the positive diagnoses of [two doctors], I find that it has not been demonstrated that the Claimant did not have pneumoconiosis." Since there is substantial evidence from which the ALJ could have reasonably concluded that the employer had not proved that Meade did not have pneumoconiosis, we find that the ALJ did not err in concluding that the employer did not meet its rebuttal burdens under (b)(4).

8

IV

Finally, the employer argues that the ALJ erred in failing adequately to explain his finding that the onset of benefits to Meade was effective as of April 1, 1979. The employer maintains that because the ALJ did not make any findings with respect to the date of onset of total disability, we should remand this case for such findings.

Section 725.503(b) of the regulations provides:"In the case of a miner who is totally disabled due to pneumoconiosis, benefits are payable to such miner beginning with the month of onset of total disability. Where the evidence does not establish the month of onset, benefits shall be payable to such miner beginning with the month during which the claim was filed." The evidence in this case is unclear with respect to the date of onset of total disability. The employer concedes that there is evidence of total disability in 1986, while Meade argues that pulmonary function studies dating back to 1980 establish total disability. The employer counters that these earlier studies have been called into question by several physicians and should be discounted. It is nevertheless the existence of this disagreement which supports the conclusion that the evidence does not establish the month of onset of total disability. Where the evidence as to date of onset is unclear, the regulations provide that the ALJ may enter the award of benefits effective on the month that the claimant filed his claim. This is what the ALJ did.

For the foregoing reasons, the decision of the Benefits Review Board is

AFFIRMED.